604 S.E.2d 348 (2004)
In the Matter of T.E.F., Juvenile.
No. COA03-1128.
Court of Appeals of North Carolina.
November 16, 2004.
Attorney General Roy Cooper, by Assistant Attorney General Judith Tillman, for the State.
Adrian M. Lapas, Goldsboro, for juvenile-appellant.
*349 CALABRIA, Judge.
T.E.F. (the "juvenile") seeks review of his adjudication on three counts of robbery with a dangerous weapon and one count of assault with a deadly weapon. We reverse and remand.
On 28 March 2003, the juvenile, age 14, and an adult identified as "Powell" approached three victims. The juvenile pushed one of them against a wall, removed a "hooked" knife from his pocket, placed the knife against the left side of the victim's neck and demanded money. The second victim voluntarily handed the juvenile one dollar. The juvenile then took money from the pocket of the first victim. When the juvenile demanded money from the other two victims, they gave him the rest of the money they had, and the juvenile fled with a total of twelve dollars. The juvenile was subsequently located and stated to the police he had taken the money to buy new clothes and shoes. The juvenile was charged with three counts of robbery with a dangerous weapon and one count of assault with a deadly weapon.
On 22 April 2003, during the Juvenile Delinquency Session of the District Court of Edgecombe County, the juvenile, through counsel, indicated he would admit the offenses charged. The trial court then personally addressed the juvenile with eight questions, and the juvenile answered the trial court's questions. After the trial court was informed there were no plea arrangements or discussions, the State recited a factual basis for the juvenile's admission, and the trial court adjudicated the juvenile delinquent on all counts. The juvenile was committed to the Office of Juvenile Justice for placement in a training school for a minimum of six months and a maximum not to exceed his nineteenth birthday.
On appeal, the juvenile asserts the trial court erred in accepting his admission without conducting the full inquiry required under N.C. Gen.Stat. § 7B-2407(a) (2003). Under N.C. Gen.Stat. § 7B-2407(a), the trial court must address the juvenile personally on the following required inquiries and statements:
(1) Informing the juvenile that the juvenile has a right to remain silent and that any statement the juvenile makes may be used against the juvenile;
(2) Determining that the juvenile understands the nature of the charge;
(3) Informing the juvenile that the juvenile has a right to deny the allegations;
(4) Informing the juvenile that by the juvenile's admissions the juvenile waives the juvenile's right to be confronted by the witnesses against the juvenile;

(5) Determining that the juvenile is satisfied with the juvenile's representation; and
(6) Informing the juvenile of the most restrictive disposition on the charge.
(Emphasis added). Pursuant to N.C. Gen. Stat. § 7B-2407(b) (2003), the trial court "may accept an admission from a juvenile only after determining that the admission is a product of informed choice." This Court *350 has stated that the function of N.C. Gen.Stat. § 7B-2407(a) is to ensure "the trial court ... determine[s] that the admission is a product of the juvenile's informed choice[,]" a pre-requisite under N.C. Gen.Stat. § 7B-2407(b) to the trial court's acceptance of a juvenile's admission. In re Kenyon N., 110 N.C.App. 294, 297, 429 S.E.2d 447, 449 (1993) (citing N.C. Gen.Stat. § 7A-633 (1989), repealed by Act of Oct. 27, 1998, ch. 202, sec. 6, 1998 N.C. Sess. Laws 695, 742-869, and recodified with no substantive change as N.C. Gen.Stat. § 7B-2407). Accordingly, if the required "inquiries and statements [do not] ... affirmatively appear in the record of the proceeding,... the adjudication of delinquency based on the admission must be set aside [,]" Id. (citation omitted)(emphasis added), and the juvenile must be permitted to replead. In re Chavis and In re Curry and In re Outlaw, 31 N.C.App. 579, 581, 230 S.E.2d 198, 200 (1976).
In the instant case, the trial court asked only five of the six questions required by N.C. Gen.Stat. § 7B-2407(a), omitting whether the juvenile was satisfied with his representation as required by N.C. Gen.Stat. § 7B-2407(a)(5). This failure precluded the trial court from properly determining the admission to be the product of informed choice as required by N.C. Gen.Stat. § 7B-2407(b) and this Court's holding in In re Kenyon N., 110 N.C.App. at 298, 429 S.E.2d at 449. See also In re Register, 84 N.C.App. 336, 348, 352 S.E.2d 889, 895-96 (1987) (holding the trial court was precluded from accepting six juveniles' admissions of vandalizing a home because the required inquiries were incomplete; the trial court addressed the juveniles as a group on some of the required inquiries, addressed them individually on others, and failed to address any of the juveniles on two inquiries) (citing N.C. Gen.Stat. § 7A-633). Accordingly, we hold the trial court erred by accepting the juvenile's admission, and "the adjudication ... based on the admission must be set aside." Kenyon N., 110 N.C.App. at 297, 429 S.E.2d at 449.
Nonetheless, the State argues any error should be deemed harmless for two reasons. First, although the trial court failed to ask the juvenile one of the six required questions, the trial court's inquiry was sufficient to establish the juvenile's admission was the product of informed choice. Second, the juvenile's brief failed to allege prejudice or that he would have pled differently had the error not occurred. In support, the State directs our attention to two cases, State v. Hendricks, 138 N.C.App. 668, 531 S.E.2d 896 (2000) (finding no prejudicial error in accepting a guilty plea where the trial court failed to comply with all N.C. Gen.Stat. § 15A-1022 inquiries because the defendant signed a transcript of plea covering all the areas omitted by the trial court) and State v. Williams, 65 N.C.App. 472, 310 S.E.2d 83 (1983) (finding no prejudicial error in accepting a guilty plea where the trial court failed to make the required N.C. Gen.Stat. § 15A-1022 inquiries because the defendant failed to allege prejudice or that he would have pled differently).
We find the State's reliance on the cited adult criminal cases misplaced. While we note "an `admission' in a juvenile hearing is equivalent to a guilty plea in a criminal case," Chavis, 31 N.C.App. at 581, 230 S.E.2d at 200; In re Johnson, 32 N.C.App. 492, 493, 232 S.E.2d 486, 487-88 (1977), we also recognize "there are ... significant differences between criminal trials and juvenile proceedings." Chavis, 31 N.C.App. at 581, 230 S.E.2d at 200. See also In re Burrus, 275 N.C. 517, 529-33, 169 S.E.2d 879, 886-89 (1969) (stating "[w]hatever may be their proper classification, [juvenile proceedings] certainly are not `criminal prosecutions'" and noting "[t]here are ... many valid distinctions between a criminal trial and a juvenile proceeding"). This Court has long recognized that in a juvenile proceeding, as opposed to an adult criminal proceeding, "the burden upon the State to see that the child's rights [are] protected" is increased rather than decreased. In re Meyers, 25 N.C.App. 555, 558, 214 S.E.2d 268, 270 (1975); Chavis, 31 N.C.App. at 581, 230 S.E.2d at 200. See also State v. Fincher, 309 N.C. 1, 24, 305 S.E.2d 685, 699 (1983) (Martin, J., concurring) (stating "[t]he state has a greater duty to protect the rights of a respondent in a juvenile proceeding"). Cf. State v. Tucker, 154 N.C.App. 653, 657, 573 S.E.2d 197, 200 (2002) (stating "[t]he juvenile system is designed *351 to protect both the welfare of the delinquent child as well as the best interest of the State"). Given the greater burden placed on the State in a juvenile proceeding and guided by our precedent in Kenyon N. and Register, we find the State's arguments unavailing.
We feel it prudent to address the resulting consequences of the dissent's proposed analysis. First, under the dissent's analysis, we would contradict the General Assembly's clear mandate granting greater rights to children in juvenile proceedings than those guaranteed under the Due Process Clause. The dissent would have us interpret Johnson as standing for the proposition that our courts need not comply with the legislation passed after Johnson was decided. See An Act to Provide a Unified Juvenile Code, ch. 815, 1979 N.C. Sess. Laws 966 (effective Jan. 1, 1980). Yet, the General Assembly's post-Johnson legislation follows, in statutory form, the distinction between criminal and juvenile proceedings noted in Burrus and Chavis, two pre-Johnson decisions, by providing greater rights to children in juvenile proceedings than those guaranteed to adults in criminal prosecutions. It is well established that the General Assembly may pass legislation governing the people's rights so long as that legislation does not violate the federal or state constitutions, Lanier, Comr. of Insurance v. Vines, 274 N.C. 486, 495, 164 S.E.2d 161, 166 (1968); Baker v. Martin, 330 N.C. 331, 338-39, 410 S.E.2d 887, 891-92 (1991), and it follows that the General Assembly may mandate that a child facing juvenile adjudication be granted greater protections than those guaranteed by the federal and state constitutions to an adult facing criminal conviction. We are not persuaded that such a mandate may be ignored.
Second, the dissent's holding would import a "totality of the circumstances" test from Hendricks for purposes of analyzing the trial court's adherence to N.C. Gen.Stat. § 7B-2407 in taking juvenile admissions. However, we note the circumstances under which this Court applied the test in Hendricks were distinct from those of the instant case because the defendant in Hendricks signed a transcript of plea, which covered all the inquiries required under N.C. Gen.Stat. § 15A-1022. The juvenile in the instant case did not sign a transcript of admission. It is true if the juvenile had signed a transcript of admission we would have some evidence that the juvenile was made aware of his rights set out under N.C. Gen.Stat. § 7B-2407, and this evidence might then warrant following the "totality of the circumstances" test applied to the adult criminal defendant in Hendricks. However, application of the Hendricks test here, as the dissent urges, would not only apply the test for adult criminal pleas to juvenile admissions where a transcript of admission was signed, but also extend the test's application to juvenile admissions where no transcript of admission was signed and where the juvenile was clearly not presented with all the required statutory inquiries and statements.
Moreover, we respectfully disagree with the dissent's assertion that our holding rejects a "totality of the circumstances" test and "might eliminate a juvenile's opportunity to argue on appeal that although the trial court complied with the statute, the juvenile was nevertheless not competent to render a valid admission-truly an absurd result." The dissent misapprehends our holding and equates the limited statutory consideration at issue in this case with every conceivable alternative argument that might otherwise be raised by a juvenile. To clarify, our decision is concerned exclusively with those situations involving a record that affirmatively discloses non-compliance by the trial court with N.C. Gen.Stat. § 7B-2407. We do not comment on other claims a juvenile may otherwise have; nor does our holding stand for the proposition that a juvenile is limited to only those six matters required by N.C. Gen.Stat. § 7B-2407.
Third, under the dissent's holding, we would contradict this Court's binding precedent, which places a greater burden on the State to protect children's rights in juvenile proceedings, by treating a juvenile admission as if it were an adult plea of guilty. The dissent would, in essence, have us interpret this Court's holding in Kenyon N. as having applied a "totality of the circumstances" test and "requir[ing] reversal because `it does not *352 affirmatively appear from the record that [any of] the provisions of [the statute] were complied with....'" More accurately, however, this Court reversed and remanded the adjudication because
the only record evidence ... reveals that the trial court failed to inquire of the juvenile whether he understood the nature of the charge against him and whether he was satisfied with his representation. The trial court also failed to inform the juvenile that he had a right to remain silent, a right to deny the charges against him, that by his admission he waived his right to confront the witnesses against him, and what constituted the most restrictive disposition possible on the charge against him. Thus, it does not affirmatively appear from the record that the provisions of [the statute] were complied with, and we are therefore unable to say that the juvenile's admission was the product of an informed choice.
Kenyon N., 110 N.C.App. at 297-98, 429 S.E.2d at 449 (emphasis added). Thus, in Kenyon N., the critical inquiry was whether the trial court complied with the provisions of the statute. Upon determining the trial court had not complied, this Court reversed and remanded the adjudication without further analysis in light of the "totality of the circumstances." Moreover, unlike Kenyon N., in this case, we are not confronted with a silent record where there is a lack of an affirmative showing concerning compliance with the provisions of the relevant statute. Rather, we can say with absolute certainty the trial court failed to comply with the statute. It seems anomalous to be able to reverse a judgment based upon a juvenile admission lacking an affirmative showing of statutory compliance, yet be constrained from reversing a judgment where there is an affirmative showing of statutory non-compliance.
Fourth, the dissent's holding would place the burden of protecting the child's rights during entry of a juvenile admission on the child, instead of the trial court maintaining the burden, as required by N.C. Gen.Stat. § 7B-2407. The dissents, analysis of the voluntariness of the juvenile's admission attempts to equate a trial court's partial compliance with the statutory requirements with actual compliance because the child, during the proceeding, was asked, in part, "whether he understood `what's going on[]'...." As troubling as that aspect is, the dissent goes on to imply that, because the child "was asked whether he had any further questions for his attorney or for the court[,]" his rights had been vindicated. This effectively converts the duty of the trial court to make the required inquiries into a duty on the part of the child to make the appropriate assertions, of which, presumably, he is supposed to be aware.
Similarly, the dissent would have us conclude that the juvenile's "hypothetical `may haves[,]' [concerning disagreements about how to proceed or whether he felt he could choose not to make the admission,] do not amount to prejudice." Initially, we note that neither Kenyon N. nor Register grafted a review for prejudice into their analyses after determining statutory non-compliance. Rather, statutory non-compliance alone made it "impossible for the judge to determine `that the admission [was] a product of informed choice[,]'" Register, 84 N.C.App. at 348, 352 S.E.2d at 896 (emphasis added), and thus necessary to set aside the adjudication of delinquency. Kenyon N., 110 N.C.App. at 297, 429 S.E.2d at 449. Moreover, it is impossible to tell from the sixteen-page transcript whether the juvenile was prejudiced as a result of the failure of the trial court to adhere to the mandates of N.C. Gen.Stat. § 7B-2407. We do know the child never unilaterally volunteered dissatisfaction with his representation, and the dissent evidently considers that sufficient. However, we cannot be certain of his satisfaction, because no one bothered to ask him. Nor do we deem it the better rule of law to impose on a child the heavy burden of maintaining his rights under the statute, when the General Assembly placed this responsibility on the trial court and mandated that the six statutory inquiries be addressed to the child in substance and on the record.
For the foregoing reasons, we hold the trial court's acceptance of the juvenile's admission, without determining the juvenile's satisfaction with his representation as required *353 by N.C. Gen.Stat. § 7B-2407(a)(5), constituted reversible error, which necessitates setting aside the juvenile's adjudication. Accordingly, the trial court's orders are reversed, and the case is remanded for a new hearing. Having so held, we need not address the juvenile's remaining assignments of error.
Reversed and remanded.
Judge WYNN concurs.
Judge LEVINSON dissents.
LEVINSON, Judge, dissenting.
The majority unreasonably elevates form over substance when it holds that the General Assembly, in enacting N.C.G.S. § 7B-2407(a)(5) (2003), intended to grant juveniles in delinquency adjudications an inalienable right to be satisfied with counsel. As I cannot agree with the majority's novel proposition that a trial court's failure to ascertain a juvenile's satisfaction with representation while accepting an admission to a delinquency petition constitutes reversible error as a matter of law, I must dissent.
The juvenile complains that because he was not asked by the trial judge whether he was satisfied with his representation, as required by G.S. § 7B-2407(a)(5), his plea must be set aside. Although the standards of appellate review for juvenile adjudications are not spelled out by statute, I discern no reason why the standards for adult criminal cases should not guide us by analogy. The admission of a juvenile is the equivalent to a plea of guilty by an adult in a criminal prosecution. In re Johnson, 32 N.C.App. 492, 493, 232 S.E.2d 486, 487-88 (1977). Therefore, the analysis that pertains in adult cases for determining whether a guilty plea must be set aside is relevant here.
A juvenile admission of guilt, like a guilty plea, constitutes a waiver of the Sixth Amendment right to confront one's accusers and of the Fifth Amendment privilege against self-incrimination. See McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418, 424 (1969). For this reason, it is beyond dispute that a juvenile's admission, like a guilty plea, must be made intelligently and voluntarily. See Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279 (1969) ("It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary."). "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162, 168 (1970) (citations omitted).
In a juvenile adjudication for delinquency, which places the juvenile in danger of confinement, the proceedings are treated as criminal proceedings inasmuch as they must be conducted with due process in accord with the constitutional safeguards of the Fifth and Sixth Amendments. See, e.g., In re Chavis, 31 N.C.App. 579, 580, 230 S.E.2d 198, 199-200 (1976). These constitutional guarantees may, as in an adult proceeding, be waived in a juvenile adjudication only if done so intelligently and voluntarily; "the record must therefore affirmatively show on its face that the [juvenile's] admission was entered knowingly and voluntarily." Id. at 581, 230 S.E.2d at 200. Where the record is deficient in this regard, "the juvenile will be allowed to replead." Id. The Juvenile Code, in G.S. § 7B-2407, reflects the Chavis requirement that the trial court must ensure the admission is entered intelligently and voluntarily before the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right of confrontation may be validly waived.
The error in the instant case is not one of constitutional dimension. Neither the Due Process Clause nor the Sixth Amendment right to effective assistance of counsel guarantees a right that a criminal defendant be satisfied with his representation. See Morris v. Slappy, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (rejecting claim that the Sixth Amendment right to counsel includes "the right to a meaningful attorney-client relationship"); United States v. Frazier-El, 204 F.3d 553 (4th Cir.2000). The same must be true in juvenile court, absent a clear mandate to the contrary from the General Assembly. I find no such mandate in the language of G.S. § 7B-2407, nor does the *354 majority point to any such authority elsewhere in the Juvenile Code. Thus, "[s]o long as proceedings in the juvenile court meet the requirements of due process, they are constitutionally sound and must be upheld." In re Burrus, 275 N.C. 517, 529-30, 169 S.E.2d 879, 887 (1969).
In the instant case, the juvenile argues that the error is a violation not of a constitutional guarantee, but of a statutory mandate. Nevertheless, he asks this Court to find the trial court's error is reversible as a matter of law. The gravamen of his argument is that the failure to ascertain whether he was satisfied with his trial counsel undermines the trial court's finding that his admission was based on an informed and voluntary choice. In support of this contention he refers us to United States v. Boone, 543 F.2d 1090 (4th Cir.1976), in which the Fourth Circuit Court of Appeals, following McCarthy, applied a per se reversal standard for violations of Rule 11 of the Federal Rules of Criminal Procedure, the federal courts' equivalent to our G.S. § 7B-2407(a). By analogy, he asks us to find the trial court's error reversible per se. However, this line of reasoning should be rejected for two reasons. First, Rule 11, unlike G.S. § 7B-2407(a), does not require the trial court to ask the defendant whether he was satisfied with counsel. Thus, no meaningful comparison to Rule 11 error can be made in this case. Second, the per se reversal standard for Rule 11 violations was superceded by a "harmless error" standard in the 1983 amendments to the rule. See F.R.Crim. P. 11(h) (2003) ("A variance from the requirements of this rule is harmless error if it does not affect substantial rights."). Thus, the federal courts' per se reversal rule of McCarthy is no longer good law.[1]
Our Juvenile Code is silent on the question of the standard of review for trial court error in the application of G.S. § 7B-2407(a). However, I find no support for the argument that a failure to ask whether a juvenile is satisfied with counsel renders his admission per se invalid. On the contrary, the Criminal Procedure Act provides that, where an error arises not under the Constitution but by violation of statute, the standard of review is whether, had the error not been committed, a reasonable possibility exists that a different result would have been reached at trial. N.C.G.S. § 15A-1443(a) (2003). The burden of proving the error was prejudicial is on the defendant. Id.
I agree with the majority that the trial court's direct questioning of the juvenile as required under G.S. § 7B-2407(a) is intended to ensure that an admission is a product of the juvenile's informed choice, in compliance with the constitutional "knowing and voluntary" standard articulated in Boykin and its progeny. However, a juvenile's admission can be determined constitutionally sound without an inquiry into whether the juvenile was satisfied with counsel. We have never engaged in a hypertechnical application of the corresponding adult statute, N.C.G.S. § 15A-1022(a) (2003), to undermine the validity of an adult's plea of guilty entered intelligently and voluntarily under the constitutional standard of Boykin. Review of the entering of a guilty plea has never involved a "technical, ritualistic approach" to the trial court's compliance with statutory language, but instead, requires an examination of "the totality of the circumstances [to] determine whether non-compliance with the statute either affected defendant's decision to plead or undermined the plea's validity." State v. Hendricks, 138 N.C.App. 668, 670, 531 S.E.2d 896, 898 (2000) (construing G.S. § 15A-1022) (citations omitted). Even where a violation of the statute occurs, appellant must show prejudice before a plea will be set aside. State v. McNeill, 158 N.C.App. 96, 103, 580 S.E.2d 27, 31 (2003) (citation omitted). Indeed, in reviewing sentencing procedures for prejudicial error, our Supreme Court has observed, "[j]ustice may be served more by the substance than the form of the process. We prefer to consider each case in the light of its circumstances." State *355 v. Pope, 257 N.C. 326, 334, 126 S.E.2d 126, 132 (1962).
A "totality of the circumstances" inquiry necessarily includes due consideration of the age, maturity and understanding of the juvenile. See In re Meyers, 25 N.C.App. 555, 558, 214 S.E.2d 268, 270 (1975) ("Although a confession is not inadmissible merely because the person making it is a minor, to be admissible it must have been voluntary, and the age of the person confessing is an additional factor to be considered in determining voluntariness.") (citation omitted).
The juvenile cases cited by the majority apply a "totality of the circumstances" test for determining whether the record affirmatively shows that a juvenile admission was intelligent and voluntary. The majority in the instant case relies on a misreading of In re Kenyon N., 110 N.C.App. 294, 429 S.E.2d 447 (1993), a case that involved a lost stenographic record of the adjudication at which the admission was entered. "The dispositive issue" was "whether the district court which initially adjudged the juvenile to be delinquent erred in accepting the juvenile's admission." Id. at 298, 429 S.E.2d at 449. Because no transcript could be produced of the district court hearing at which the admission was accepted, the record in Kenyon N. failed to show affirmatively that the juvenile had been informed that, among other things, he had a right to remain silent, that he had a right to deny the charges against him, and that by his admission he waived his right to confront the witnesses against him. There was no affirmative showing that the juvenile understood the nature of the charge, nor that he was satisfied with his representation. Thus, after reviewing all of the circumstances, we concluded the adjudication required reversal because "it does not affirmatively appear from the record that [any of] the provisions of [the statute] were complied with, and we are therefore unable to say that the juvenile's admission was the product of an informed choice. Accordingly, the order adjudicating delinquency based on the admission is vacated." Id. at 296, 429 S.E.2d at 449.
Likewise, in the cases consolidated as In re Chavis, reversal of the juveniles' pleas was required because, under the circumstances of that case, the record was deficient. 31 N.C.App. at 581, 230 S.E.2d 198 at 200 ("At a juvenile hearing an admission by a juvenile must be made knowingly and voluntarily, and this fact must affirmatively appear on the face of the record, or the juvenile will be allowed to replead.").
Applying the totality of circumstances test, the record in the instant case amply shows that T.E.F.'s admission was the result of his informed choice, satisfying the constitutional standard of Boykin. T.E.F., age fourteen, answered affirmatively that he understood his right to remain silent, his right to deny the allegations in the petition, and his right to confront the witnesses against him. He answered affirmatively that he understood the allegations, and that he knew he could be sent to a training school as a result of his admission. He was asked whether he understood "what's going on," and he was asked whether he had any further questions for his attorney or for the court. The State supplied a factual basis for the allegations. T.E.F.'s counsel and his mother were both present with him in court. The record indicates the juvenile had "prior court involvement." Undoubtedly, use of a "Transcript of Admission by Juvenile," form AOC-J-410, in addition to the allocution required by G.S. § 7B-2407(a), is the better practice. But the trial court's failure to ask whether T.E.F. was satisfied with his representation, under the circumstances of this case, does not render T.E.F.'s admission constitutionally or statutorily infirm such that the adjudication must be cast aside.
The majority's rejection of a totality of circumstances test for review of the voluntariness of a juvenile admission is unsupported in law. Moreover, it undermines the majority's stated objective, as well as the constitutional mandate, of protecting the rights of juveniles. Instead of considering all the relevant factors, the majority would merely look to whether the trial court adhered to the letter of the statute. As a result, rather than enhancing protection of a juvenile's rights by ensuring appellate review of all relevant circumstances to verify the intelligent and voluntary nature of a juvenile *356 admission, a strict reading of the majority opinion could narrow the scope of appellate review. For example, if the test for whether a juvenile admission is intelligent and voluntary is statutory compliance rather than totality of the circumstances, perhaps we need not consider the juvenile's age, maturity, or level of understanding. Strict application of the majority's approach might eliminate a juvenile's opportunity to argue on appeal that although the trial court complied with the statute, the juvenile was nevertheless not competent to render a valid admission-truly an absurd result.
Just as a trial court's strict compliance with G.S. § 7B-2407(a) cannot preclude later inquiry into the voluntariness of a juvenile admission, a failure to comply rigidly with the statute cannot, in and of itself, render the admission invalid. "[There is] no talismanic definition of `voluntariness,' mechanically applicable to the host of situations where the question has arisen." Schneckloth v. Bustamonte, 412 U.S. 218, 224, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854, 861 (1973); see also Wade v. Coiner, 468 F.2d 1059, 1061 (4th Cir.1972) (holding that due process does not require "[a] catechism of the constitutional rights that are waived by entry of a guilty plea").
The juvenile in the instant case does not argue, nor does the record suggest, that he was actually prejudiced by the error. On appeal, he does not state he was dissatisfied with his appointed counsel. Moreover, he does not claim that an inquiry on that point by the trial court would have affected his decision to enter an admission. In T.E.F.'s brief, it is claimed that the juvenile and his trial counsel "may have had severe disagreements about how to proceed or [the juvenile] may have felt that his lawyer may not have fully investigated the case so that he really felt that he had no choice but to [admit the allegations]." (emphasis added). Such hypothetical "may haves" do not amount to prejudice. The trial court's failure to ask T.E.F. whether he was satisfied with his representation, under these circumstances, does not remotely undermine the validity of his admission.
The majority, in holding that a trial court's failure to follow the language of G.S. § 7B-2407(a) to the letter results in reversible error as a matter of law, opens the door to automatic reversal of any juvenile delinquency adjudication where the trial court fails to perform a verbatim recitation of the allocution in the statute. Instead, the proper inquiry is whether, under the totality of the circumstances, the admission was entered knowingly and voluntarily. Because the record fully supports the finding that the admission was made knowingly and voluntarily, and because the facts in the instant case reveal no hint of actual prejudice, the juvenile's admission is completely valid. I vote to affirm.
NOTES
[1] "The one clearly expressed objective of Rule 11(h) was to end the practice, then commonly followed, of reversing automatically for any Rule 11 error, and that practice stemmed from an expansive reading of McCarthy." United States v. Vonn, 535 U.S. 55, 66, 122 S.Ct. 1043, 1050, 152 L.Ed.2d 90, 104 (2002).