614 S.E.2d 296 (2005)
359 N.C. 570
In the Matter of T.E.F.
No. 608A04.
Supreme Court of North Carolina.
July 1, 2005.
Roy Cooper, Attorney General, by Judith Tillman, Assistant Attorney General, for the State-appellant.
Adrian M. Lapas, Goldsboro, for juvenile-appellee.
*297 LAKE, Chief Justice.
The sole question presented for review is whether the trial court, in conducting a juvenile adjudicatory hearing, committed reversible error by accepting the admission of guilt of the juvenile (T.E.F.) without conducting the full inquiry required under N.C.G.S. § 7B-2407(a).
The Court of Appeals' majority reversed the trial court, holding that because the trial court failed to determine T.E.F.'s satisfaction with his representation by counsel as required by N.C.G.S. § 7B-2407(a), "the trial court's acceptance of the juvenile's admission ... necessitates setting aside the juvenile's adjudication." In re T.E.F., 167 N.C.App. 1, 6, 604 S.E.2d 348, 352-53 (2004). The Court of Appeals remanded the case to the trial court for a new adjudicatory hearing. Id. at 8, 604 S.E.2d at 353. Judge Levinson dissented, contending that a "totality of the circumstances" test surrounding the hearing should be applied in deciding whether a juvenile understood his rights and that failure to specifically ask each of the six questions listed under N.C.G.S. § 7B-2407(a) should not be reversible error as a matter of law. Id. at 11, 604 S.E.2d at 354-55. The dissent specifically contended that the eight questions asked of the juvenile by the trial court, in effect, determined and showed that T.E.F. was in fact satisfied with counsel and was fully informed. These questions included:
Do you understand that you have the right to remain silent and that anything you say may be used against you?
Do you understand that you have the right to deny that you committed the offenses of three counts of armed robbery and one count of assault with a deadly weapon?
Do you understand by admitting that you did this that you give up the constitutional right to confront the witness against you?
Do you understand that by admitting this that you could be sent to training school?
Do you understand what you're charged with?
Do you have any questions for [your attorney] or for me?
Do you have any further questions at all?
Do you understand what's going on?
The State appealed to this Court as of right based on the dissenting opinion of Judge Levinson. After careful review, we affirm the decision of the Court of Appeals reversing the trial court and remanding for a new adjudicatory hearing for T.E.F.
The relevant facts concerning this case show that on 28 March 2003, T.E.F., age fourteen, and an adult companion known as "Powell" approached three boys standing outside the entrance to Park Hill Mall. T.E.F. pushed one of the boys against the wall, pulled out a "hooked" knife and placed it against the left side of the boy's neck, and demanded money. The boy reached into his pocket and removed one dollar and gave it to T.E.F. T.E.F. then reached into the boy's pocket and withdrew more money. While T.E.F. had the first boy against the wall, he demanded money from the other two boys. Both gave T.E.F. the money they had. T.E.F. and Powell then fled, after taking a total of twelve dollars.
Subsequently, the police arrived and obtained descriptions of the two suspects from the three victims. T.E.F. and Powell were located, and T.E.F. was identified as the person who had taken the victims' money. T.E.F. was charged with three counts of robbery with a dangerous weapon, one count of carrying a concealed weapon, and one count of assault with a deadly weapon.
On 22 April 2003, during the Juvenile Delinquency Session of the District Court of Edgecombe County, T.E.F. indicated, through counsel, that he would admit the offenses charged. Upon such admission, the State dismissed the charge of carrying a concealed weapon. The trial court was informed *298 that there were no ongoing plea arrangements or discussions. The State presented a factual basis to support T.E.F.'s admission, and the trial court adjudicated T.E.F. delinquent on the remaining counts. T.E.F. was committed to the Department of Juvenile Justice and Delinquency Prevention for placement in a training school for a minimum of six months and a maximum not to exceed his nineteenth birthday.
T.E.F. appealed to the Court of Appeals, asserting the trial court erred in accepting his admission without conducting the full inquiry required under N.C.G.S. § 7B-2407(a), specifically arguing that the trial court failed to ascertain whether he was fully satisfied with his legal representation. The Court of Appeals agreed and reversed the decision of the trial court and remanded the case for a new hearing. Judge Levinson dissented, contending that when determining whether the requirements of N.C.G.S. § 7B-2407(a) have been fulfilled, a "totality of the circumstances" standard should be employed rather than holding that failure to strictly follow the statute is reversible error as a matter of law.
N.C.G.S. § 7B-2407(a) states:
(a) The court may accept an admission from a juvenile only after first addressing the juvenile personally and:

(1) Informing the juvenile that the juvenile has a right to remain silent and that any statement the juvenile makes may be used against the juvenile;
(2) Determining that the juvenile understands the nature of the charge;
(3) Informing the juvenile that the juvenile has a right to deny the allegations;
(4) Informing the juvenile that by the juvenile's admissions the juvenile waives the juvenile's right to be confronted by the witnesses against the juvenile;
(5) Determining that the juvenile is satisfied with the juvenile's representation; and
(6) Informing the juvenile of the most restrictive disposition on the charge.
N.C.G.S. § 7B-2407(a) (2003) (emphasis added). Next, N.C.G.S. § 7B-2407(b) states that the trial court "may accept an admission from a juvenile only after determining that the admission is a product of informed choice." (Emphasis added.) Moreover, our courts have held that the purpose and function of N.C.G.S. § 7B-2407(a) is to ensure "the trial court ... determine[s] that the admission is a product of the juvenile's informed choice" as required by N.C.G.S. § 7B-2407(b), meaning these two sections of N.C.G.S. § 7B-2407 must be read in conjunction in determining whether to accept a juvenile's admission of guilt. In re Kenyon N., 110 N.C.App. 294, 297, 429 S.E.2d 447, 449 (1993) (citing N.C.G.S. § 7A-633 (1989)), repealed and recodified as amended at N.C.G.S. § 7B-2407 by Act of Oct. 22, 1998, ch. 202, secs. 5 & 6, 1998 N.C. Sess. Laws 695, 742, 817-18.
The use of the mandatory word "only" together with "and" in N.C.G.S. § 7B-2407(a) undoubtedly means that all of these six specific steps are paramount and necessary in accepting a juvenile's admission as to guilt during an adjudicatory hearing. If our legislature intended for these six steps to be mere suggestions or a general guide for our trial courts, this mandatory language could have easily been omitted. It was not, however, and we must interpret this language precisely as it is written. Therefore, the determination as to whether a juvenile's admission is a product of an informed choice as required by N.C.G.S. § 7B-2407(b), at a very minimum, is predicated upon the six mandatory requirements specifically listed in N.C.G.S. § 7B-2407(a). If the required "inquiries and statements [do not] ... affirmatively appear in the record of the proceeding, ... the adjudication of delinquency based on the admission must be set aside." Kenyon N., 110 N.C.App. at 297, 429 S.E.2d at 449 (citation omitted).
N.C.G.S. § 7B-2405 further shows the mandatory nature of the six requirements listed in N.C.G.S. § 7B-2407(a). N.C.G.S. § 7B-2405, titled "Conduct of the adjudicatory hearing," states in part:
In the adjudicatory hearing, the court shall protect the following rights of the juvenile ... to assure due process of law:
(1) The right to written notice of the facts alleged in the petition;

*299 (2) The right to counsel;

(3) The right to confront and cross-examine witnesses;
(4) The privilege against self-incrimination;
(5) The right of discovery; and
(6) All rights afforded adult offenders except the right to bail, the right of self-representation, and the right of trial by jury.

N.C.G.S. § 7B-2405 (2003) (emphasis added). By listing the rights that the trial court must protect during juvenile adjudicatory hearings to assure that due process is satisfied, and by subsequently listing the six steps specified in N.C.G.S. § 7B-2407(a) that must be taken before accepting a juvenile's admission of guilt and waiver of these rights, it is clear that our legislature intended a procedure more protective and careful than that afforded adults to ensure a fully informed choice and voluntary decision by all juveniles.
In the case at bar, although the trial court conducted a detailed and careful examination of T.E.F. in asking him the eight questions listed above, this information nevertheless fell short of the specific and mandatory language of N.C.G.S. § 7B-2407(a). The trial court covered only five of the six specific requirements listed. In its examination of T.E.F., the trial court did not specifically question T.E.F. on the fifth listed requirement under the statute, whether the juvenile was satisfied with his legal representation. This omission precluded the trial court from accepting T.E.F.'s admission as being a product of his informed choice. See Kenyon N., 110 N.C.App. at 298, 429 S.E.2d at 449; see also In re Register, 84 N.C.App. 336, 348, 352 S.E.2d 889, 895-96 (1987) (holding the trial court was precluded from accepting six juveniles' admissions because the required inquiries under the statute were incomplete). Therefore, we agree with the Court of Appeals' determination that the trial court erred in accepting T.E.F.'s admission and that his adjudication of delinquency must be set aside. Kenyon N., 110 N.C.App. at 297, 429 S.E.2d at 449.
Further, we decline to adopt a "totality of the circumstances" standard of review when determining whether a juvenile's admission of guilt is a product of an informed choice under N.C.G.S. § 7B-2407. While we agree that "an `admission' in a juvenile hearing is equivalent to a guilty plea in a criminal case," we also recognize the fact that there are significant differences between adult criminal trials and juvenile proceedings. In re Chavis, 31 N.C.App. 579, 581, 230 S.E.2d 198, 200 (1976), cert. denied, 291 N.C. 711, 232 S.E.2d 203 (1977). Our courts have consistently recognized that "[t]he [S]tate has a greater duty to protect the rights of a respondent in a juvenile proceeding than in a criminal prosecution." State v. Fincher, 309 N.C. 1, 24, 305 S.E.2d 685, 699 (1983) (Harry Martin, J., concurring) (citing In re Meyers, 25 N.C.App. 555, 558, 214 S.E.2d 268, 270 (1975)) (holding that in a juvenile proceeding, unlike an ordinary criminal proceeding, the burden upon the State to see that a juvenile's rights are protected is increased rather than decreased). This higher burden placed upon the State to protect juvenile rights would certainly be undermined by ignoring the mandatory language of N.C.G.S. § 7B-2407 and by adopting a less certain and variable "totality of the circumstances" standard when determining whether a juvenile's admission is a product of an informed choice. We do not believe this was the intent of our General Assembly when it enacted N.C.G.S. § 7B-2407, requiring all six areas of inquiry before the juvenile's admission of guilt may be accepted.
Accordingly, we refuse to blur the distinction between juvenile proceedings and adult criminal proceedings, and we reemphasize the fact that increased care must be taken to ensure complete understanding by juveniles regarding the consequences of admitting their guilt. At a very minimum, this requires asking a juvenile each of the six specifically mandated questions listed in N.C.G.S. § 7B-2407(a). We note that the Administrative Office of the Courts has available a standard form incorporating these statutory areas of inquiry.[1]
*300 The decision of the Court of Appeals is affirmed.
AFFIRMED.
Justice NEWBY dissenting.
The juvenile placed a "hooked" knife against the neck of the victim and robbed him and two companions. At his hearing, the juvenile indicated his desire to admit his guilt. (The State agreed to dismiss one charge.) Before accepting the admission, the trial court personally addressed the juvenile and determined the admission was "knowing and voluntary." Only after doing so did the court find the juvenile to be delinquent and enter the disposition as required by law. Now the majority remands this case to an overworked trial court because the trial judge failed to ask one question, namely, whether the juvenile was satisfied with his attorney. It does this despite no allegation of prejudice to the juvenile. I believe neither a plain reading of the statute nor case law supports this decision and respectfully dissent.

I.
In keeping with fundamental concepts of justice and due process, Subchapter II of the Juvenile Code, N.C.G.S. §§ 7B-1500 to -2827, provides for the protection of certain rights of the juvenile during delinquency proceedings. Section 7B-2000 explicitly recognizes a juvenile's right to be represented by counsel, whether appointed or retained. Similarly, N.C.G.S. § 7B-2405 requires the trial court to protect certain rights of the accused juvenile, specifically, the privilege against self-incrimination and the right to counsel, to written notice of the facts alleged, to confront and cross-examine witnesses, to discovery and to certain other rights afforded adult offenders.
When a juvenile wishes to admit allegations of criminal wrongdoing, the court must determine that the admissions are knowing and voluntary, "a product of informed choice." N.C.G.S. § 7B-2407(b) (2003). See, e.g., In re W.H., 166 N.C.App. 643, 646, 603 S.E.2d 356, 358 (2004). N.C.G.S. § 7B-2407(a) has codified various elements that constitute "informed choice." Thereunder, the trial court must "inform" the juvenile of four basic rights and make "determinations" regarding two others.
N.C.G.S. § 7B-2407(a) states:.
(a) The court may accept an admission from a juvenile only after first addressing the juvenile personally and:
(1) Informing the juvenile that the juvenile has a right to remain silent and that any statement the juvenile makes may be used against the juvenile;
(2) Determining that the juvenile understands the nature of the charge;
(3) Informing the juvenile that the juvenile has a right to deny the allegations;
(4) Informing the juvenile that by the juvenile's admissions the juvenile waives the juvenile's right to be confronted by the witnesses against the juvenile;
(5) Determining that the juvenile is satisfied with the juvenile's representation; and
(6) Informing the juvenile of the most restrictive disposition on the charge.
N.C.G.S. § 7B-2407(a) (2003).
No doubt the General Assembly chose its language carefully. Whereas subdivisions (a)(1), (3), (4), and (6) specifically instruct the trial court to "inform" the juvenile of certain rights and the consequences of relinquishing those rights; subdivisions (a)(2) and (5) require the court to make "determinations" regarding the juvenile's understanding of the charges and satisfaction with legal representation. Although a court could directly inquire of the juvenile whether he understands the charges and is satisfied with his representation, the answers would not be dispositive. The intent of subdivision (a)(5) is not that the juvenile be subjectively "satisfied" with his counsel, but that the "juvenile's representation" meet an objective minimum standard of competency. The legislature has emphasized the objective nature of the inquiry by use of the term "representation" instead of attorney. In essence, subdivision (a)(5) is simply designed to insure that the right to counsel as specified in N.C.G.S. § 7B-2405 has been met.
*301 Without analysis, the majority characterizes the six subdivisions of N.C.G.S. § 7B-2407(a) as required "questions to be asked of a juvenile," apparently interpreting "informing" and "determining" to both mean "inquire." The majority further states subsection 2407(a) requires a court to ask a juvenile "each of the six specifically mandated questions listed in [the statute]." The majority, however, never expressly states the "specifically mandated questions" nor addresses the specific statutory language. N.C.G.S. § 7B-2407(a) does not utilize the term "inquiry" or anything comparable.
By ignoring the plain language of the statute, the majority rewrites subdivision (a)(5) to read as follows: "Specifically inquire whether the juvenile is satisfied with counsel." However, the role of the appellate court is not to superimpose its view upon the plain language of the statute. See Henry v. Edmisten, 315 N.C. 474, 491, 340 S.E.2d 720, 731 (1986) ("The role of the Court is not to sit as a super legislature and second-guess the balance struck by the elected officials.").
The following statute, referenced by the majority, exemplifies the careful choice of words by the General Assembly.
By inquiring of the prosecutor, the juvenile's attorney, and the juvenile personally, the court shall determine whether there were any prior discussions involving admissions, whether the parties have entered into any arrangement with respect to the admissions and the terms thereof, and whether any improper pressure was exerted. The court may accept an admission from a juvenile only after determining that the admission is a product of informed choice.
N.C.G.S. § 7B-2407(b)(emphasis added).
This statute specifically directs the trial court to "inquire" into particular matters before making a "determination." In contrast, subdivision 2407(a)(5) simply instructs the court to "determine" whether a juvenile is satisfied with his representation. I do not believe the legislature used the term "determine" to mean "inquire," particularly in view of its having used the two terms to convey two distinct meanings in the very next subsection. The language of subdivision 2407(a)(5) is similar to the last phrase of subsection (b) in which the court must "determine" that the admission "is a product of informed choice." Does this mean the court simply asks one question of the juvenile, "Is your admission the product of informed choice?"? No, the trial court makes the determination based upon all the available information. Likewise, regarding "satisfaction" with representation, the court is not to inquire as to the juvenile's subjective evaluation, but by considering all of the available information, "determine" if the juvenile's attorney meets a basic standard of competency in his representation of his client.
Directly asking the juvenile if he is satisfied with his representation is not very helpful to the trial court's determination. In Subchapter II of the Juvenile Code, our legislature has recognized the lack of maturity and life experiences of juveniles. In answering whether he is "satisfied" with his legal representation, it is conceivable that a juvenile could express dissatisfaction with an extremely competent counsel. Conversely, a juvenile could express appreciation for a particularly personable counsel who has failed to meet the minimum standards of competency.
The facts of this case establish that the trial court had sufficient bases to determine the competency of the fourteen-year-old juvenile's legal representation without directly asking the juvenile. At his hearing, when the juvenile indicated through counsel his desire to admit the offenses, the trial court personally addressed the juvenile and asked eight questions:
Do you understand that you have the right to remain silent and that anything you say may be used against you?
Do you understand that you have the right to deny that you committed the offenses of three counts of armed robbery and one count of assault with a deadly weapon?
Do you understand by admitting that you did this that you give up the constitutional right to confront the witness against you?
Do you understand that by admitting this that you could be sent to training school?
Do you understand what you're charged with?

*302 Do you have any questions for [your attorney] or for me?
Do you have any further questions at all?
Do you understand what's going on?
The order and content of these questions reveal that the trial court was familiar with and adhered to the statutory requirements of N.C.G.S. § 7B-2407(a). In particular, the last three questions indicate the trial court's understanding of his need to determine whether the juvenile was objectively satisfied with his representation and that his admission was knowing and voluntary. The trial court properly considered all of the answers provided by the juvenile. The court inquired as to the existence of plea arrangements or discussions. The State presented the factual basis for the juvenile's admission. Thus, it appears the trial court considered all of the factors and determined the juvenile understood the charges and had received satisfactory legal representation. The trial court further determined that the admission was knowing and voluntary and accepted it.
As noted by the majority, the court could have used AOC Form J-410 when conducting its inquiry. Although this form is not mandatory, it supports my analysis. Rather than relying on the majority's "six specifically mandated questions," it includes sixteen questions clearly designed to consider all the circumstances so as to insure that admissions are knowing and voluntary.
The majority admits "the trial court conducted a detailed and careful examination of T.E.F," but states that the examination "fell short of the specific and mandatory language of N.C.G.S. § 7B-2407(a)" by failing to "specifically question ... whether the juvenile was satisfied with his legal representation." The majority reasons the failure to ask this one specific question "precluded the trial court from accepting T.E.F.'s admission as being a product of his informed choice." By so ruling, the majority superimposes its rigid legalism over the legislative intent as expressed in the plain language of the statute.

II.
Assuming arguendo that the trial court was required by the statute to ask the juvenile if he were satisfied with his representation, a mere technical violation should not result in a new hearing. At a minimum, prejudice must be shown by way of harmless-error analysis. Here, there is no suggestion of prejudice.
Our General Assembly has enacted a statutory harmless-error rule.
A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is on the defendant.
N.C.G.S. § 15A-1443(a) (2003). This statute has been applied to numerous situations, including capital litigation. See, e.g., State v. Walters, 357 N.C. 68, 81, 588 S.E.2d 344, 352, cert. denied, 540 U.S. 971, 124 S.Ct. 442, 157 L.Ed.2d 320 (2003).
Likewise, most violations of federal constitutional rights are subject to harmless error analysis. In that context, if a defendant is represented by counsel, there is a strong presumption that any error is subject to harmless error analysis. See generally State v. Allen, 359 N.C. 425, 615 S.E.2d 256 (July 1, 2005) (No. 482PA04) (Martin, J. concurring in part and dissenting in part)(applying federal law).
N.C.G.S. § 7B-2407(a) is virtually identical to the comparable adult provision N.C.G.S. § 15A-1022(a) which provides:
(a) Except in the case of corporations or in misdemeanor cases in which there is a waiver of appearance under G.S. 15A-1011(a)(3), a superior court judge may not accept a plea of guilty or no contest from the defendant without first addressing him personally and:
(1) Informing him that he has a right to remain silent and that any statement he makes may be used against him;
(2) Determining that he understands the nature of the charge;
(3) Informing him that he has a right to plead not guilty;

*303 (4) Informing him that by his plea he waives his right to trial by jury and his right to be confronted by the witnesses against him;
(5) Determining that the defendant, if represented by counsel, is satisfied with his representation;
(6) Informing him of the maximum possible sentence on the charge for the class of offense for which the defendant is being sentenced, including that possible from consecutive sentences, and of the mandatory minimum sentence, if any, on the charge; and
(7) Informing him that if he is not a citizen of the United States of America, a plea of guilty or no contest may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law.
N.C.G.S. § 15A-1022(a) (2003). Except for the phrase "if represented by counsel," subdivision (a)(5) is substantively identical in the two statutes.
Case law is clear that mere non-compliance with this statute applicable to adults does not, absent a showing of prejudice, render the plea or admission invalid or entitle the accused to a new hearing or trial:
Our courts have rejected a ritualistic or strict approach in applying these standards and determining remedies associated with violations of G.S. § 15A-1022. Even when a violation occurs, there must be prejudice before a plea will be set aside. Moreover, in examining prejudicial error, courts must "look to the totality of the circumstances and determine whether non-compliance with the statute either affected defendant's decision to plead or undermine the plea's validity."
State v. McNeill, 158 N.C.App. 96, 103, 580 S.E.2d 27, 31 (2003)(internal citations omitted). For a juvenile no less than for an adult, the dispositive issue is whether the juvenile's admission was voluntary and knowing. If it is clear that an error had no effect and that the individual would have made the same decision even without the error, then the error is harmless beyond reasonable doubt.
Two of the juvenile cases cited by the majority utilized the totality of the circumstances test to ascertain if a juvenile's decision was voluntary and knowing. In re Kenyon N., 110 N.C.App. 294, 298, 429 S.E.2d 447, 449 (1993); In re Chavis, 31 N.C.App. 579, 581, 230 S.E.2d 198, 200 (1976), disc. rev. denied, 291 N.C. 711, 232 S.E.2d 203 (1977). I would apply this test to determine if the juvenile would have made the same decision even if the judge had asked him if he were satisfied with his representation.
In this case, the juvenile unambiguously indicated that he understood the charges, that he understood the potential penalties, and that he understood all rights he forfeited by his admission. It is not reasonable to suppose that if the judge had directly inquired into the juvenile's subjective satisfaction with his representation that the juvenile's decision would have been different. The juvenile's admission was voluntary and knowing and the error, if any, was harmless beyond reasonable doubt.
Certainly I agree with the majority that the State has an enhanced burden to protect the rights of juveniles. However, I do not believe that applying the plain meaning of our statutes "undermine[s]" that goal. Put precisely, a juvenile's right to competent counsel is not "undermined" by a trial court's determination of the adequacy of representation without directly inquiring of the juvenile. Likewise, I believe the majority's criticism of the use of "totality of the circumstances" and harmless-error analysis is unfounded. A juvenile's right to competent legal counsel is not "undermined" by an appellate court's review of all of the circumstances and conclusion that the failure of a trial court to specifically inquire as to the juvenile's satisfaction with representation was not prejudicial beyond a reasonable doubt.
Further, as noted by the Court of Appeals dissent, rote statutory adherence as mandated by the majority undermines the protection of juveniles' rights. The "six mandatory questions" could be properly asked and answered and the admission accepted; whereas a "totality of the circumstances" review could demonstrate the admission was not knowing and voluntary. Unfortunately, this legalistic *304 approach "elevates form over substance." In re T.E.F., 167 N.C.App. 1, 8, 604 S.E.2d 348, 353 (2004)(Levinson, J., dissenting).
For the foregoing reasons, I respectfully dissent.
NOTES
[1] AOC Form J-410 (Rev.7/99).