An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-954

Filed 4 June 2025

Davie County, No. 22 JB 000062-290

IN THE MATTER OF:
B.A.S.

Appeal by Juvenile from order entered 6 December 2023 by Judge Jon W. Myers in District Court, Davie County. Heard in the Court of Appeals 20 March 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Elizabeth S. Young, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Heidi E. Reiner, for the Juvenile–Appellant.*

MURRY, Judge.

B.A.S. (Juvenile) appeals the trial court's adjudication and disposition order classifying him as a Juvenile Delinquent Level 2. Juvenile argues that the trial court prejudicially erred by allowing him to testify in his own defense without first conducting the required colloquy, thereby violating his constitutional privilege against self-incrimination. For the reasons below, this Court holds that the trial court only harmlessly erred in doing so.

## I.    Background

Juvenile challenges his delinquency adjudication and disposition in District Court, Davie County, for second-degree forcible rape under N.C.G.S. § 14-27.22. N.C.G.S. § 14-27.22(a)(1) (2023). In the months prior to January 2023, Juvenile struck up an acquaintanceship with a seventh-grade classmate, N.K.B (victim).[1] In mid-January 2023, N.K.B.'s mother allowed N.K.B. to invite Juvenile over to their house to play video games and to watch a movie together. While in the victim's bedroom, the two children engaged in penetrative vaginal intercourse. Their respective interpretations of this event differ from this point forward.

Two weeks later, the victim alleged that Juvenile committed rape under threat of physical force against victim's mother. The mother then brought the victim child to the Davie County Sheriff's Office for an interview with Detective Hannah Wittington, the investigating officer. In concert with this investigation, the victim also submitted to consultations with Medical Director Amy Suttle and Forensic Interview Specialist Emily Lamb of the Dragonfly House Children's Advocacy Center (Dragonfly House).

After two probable-cause hearings in the summer of 2023, the trial court conducted an adjudication hearing on 9 September 2023 to determine Juvenile's possible delinquency. The State adduced testimony by the victim, Detective

---

[1] We refer to the two minors using pseudonyms to preserve their anonymity. *See* N.C.G.S. § 7B-2057 (2023) (record confidentiality); N.C. R. App. P. 30(a)(2) (oral argument pseudonymity); *id.* 42(b) (briefing pseudonymity).

Wittington, and both Dragonfly House investigators to support the victim's rape accusation. Lacing any third-party supporting evidence, Juvenile testified in his own defense. The trial court made no effort to warn Juvenile of the constitutional privilege against self-incrimination prior to him taking the stand. Juvenile testified that the encounter with the victim was consensual and denied ever threatening the victim's mother. Juvenile offered no additional evidence in defense. After closing arguments and based on the evidence presented, the trial court adjudicated him as a juvenile delinquent under N.C.G.S. § 7B-2411. Based on this proceeding, the trial court entered a disposition order for Juvenile to enter treatment as a Juvenile Delinquent Level 2 on 6 December 2023. Juvenile timely appealed this order.

## II.    Jurisdiction

This Court has jurisdiction to hear Juvenile's appeal because it concerns the "final order of [a trial] court in a juvenile matter" that follows "adjudication . . . [of] delinquen[cy]." N.C.G.S. § 7B-2602(3) (2023).

## III.    Analysis

On appeal, Juvenile argues that the trial court prejudicially erred by not advising him of his constitutional and statutory due-process privilege against self-incrimination. *See In re Gault*, 387 U.S. 1, 55 (1967) (holding that "constitutional privilege against self-incrimination is applicable . . . [to] juveniles"); *In re A.O.*, 285 N.C. App. 565, 568 (2022) (recognizing same); N.C.G.S § 7B-2405(4) (2023) (codifying same). This Court reviews *de novo* both the statutory and constitutional obligations

of a trial court, including its duty to protect a juvenile's right against self-incrimination in an adjudication proceeding. *See* 1A N.C. Index 4th *Appeal and Error* § 450, Westlaw (database updated May 2025); *In re A.O.*, 285 N.C. App. 565, 567 (2022) (reviewing *de novo* regardless of contemporaneous objection because juvenile alleged trial court acted contrary to statutory mandate). The State concedes error by the trial court in failing to offer the required "colloquy" but contests any prejudice that would require appellate reversal. *In re J.R.V.*, 212 N.C. App. 205, 209 (2011). Because Juvenile's testimony was uniformly favorable to his own defense, however, the trial court's admitted failure to warn him did not prejudice his case. Thus, this Court holds that the trial court committed only harmlessly error in doing so.

As incorporated by the federal Fourteenth Amendment's Due Process Clause to the States, juveniles delinquent have at least the same due-process right against self-incrimination as do their criminal adult counterparts. *See Gault*, 387 U.S. 20 ("Due process of law is the primary and indispensable foundation of individual freedom."). As a matter of public policy, though, North Carolina even more closely protects its accused juveniles in adversarial proceedings than similarly placed adults. *See, e.g.*, N.C.G.S § 7B-2000 (presumed indigency); *id.* § 7B-2407 (heightened plea requirements). Our courts have "a *greater* duty to protect the rights of a respondent in a juvenile proceeding than in a criminal prosecution." *In re T.E.F.*, 359 N.C. 570, 575 (2005) (quotation omitted); *accord Gault*, 387 U.S. at 45 (warning that "admissions and confessions of juveniles require special attention").

Section 7B-2405 codifies this constitutional right by requiring a trial court to preserve "[t]he privilege against self-incrimination," N.C.G.S. § 7B-2405(4), when presiding over "juvenile adjudicatory hearings to assure that due process is satisfied," *T.E.F.*, 359 N.C. at 574. To meet this duty, a trial court must engage in "*some* colloquy . . .[with] the juvenile" prior to his testimony "to ensure that . . . [he] understands [his] right against self-incrimination." *In re S.C.*, 290 N.C. App. 312, 314 (2023) (quoting *J.R.V.*, 212 N.C. App. 205, 209 (2011)). Failure to do so reversibly prejudices him unless the State can meet its "burden of demonstrating . . . harmless [error] beyond a reasonable doubt." *A.O.*, 285 N.C. at 568; *see* N.C.G.S. § 15A-1443(b) (same language). Although harmlessness in this context "depends largely on the circumstances of the particular case," 5 C.J.S. *Appeal and Error* § 982, Westlaw (database updated May 2024), this Court generally looks to whether a juvenile's testimony absent a colloquy either aligns "with the prior evidence presented by the State" or "otherwise favor[s]" him. *J.R.V.*, 212 N.C. App. at 210. We analyze only the extent of any resulting prejudice here because both parties acknowledge the trial court's erroneous failure to administer the required colloquy to Juvenile prior to his provided testimony.

Here, the State has shown the harmlessness of the trial court's failure to advise Juvenile of his privilege against self-incrimination. Juvenile's testimony clearly favored his case at trial because it directly contradicted opposing testimony that he "threatened" the victim into silence. The victim adduced testimony by the

investigating officer and Dragonfly House's forensic medical examiners. Unable to offer any third-party evidence in defense, Juvenile took the stand to offer a different interpretation of the January 2023 encounter.

Although contrary to the victim's personal account, this testimony "did not alter the character of the relationship" between the two minors "that . . . the State's evidence" "established." *J.R.V.*, 212 N.C. App. at 210. Both parties acknowledged a mutual acquaintanceship prior to their sexual encounter. They also acknowledged an invitation to watch a movie together in January 2023, when at least some penetrative vaginal intercourse occurred. Only at this point do the adversarial fact patterns diverge. Juvenile may have responded to the victim's rape allegation with a consent defense, but he offered only personal testimony to that effect—in contrast to the victim's multiple supporting after-the-fact witnesses in opposition. Had Juvenile not done so, the victim's "overwhelming evidence of [his] guilt" arguably would have put his case in an even weaker position before the trial court. 1A N.C. Index 4th *Appeal and Error* § 510. Thus, this Court holds that the State has shown the harmlessness of the trial court's error beyond a reasonable doubt.

## IV.   Conclusion

For the reasons discussed above, this Court holds that the trial court did not prejudicially err by failing to inform Juvenile of his constitutional and statutory privilege against self-incrimination prior to him testifying in his own defense.

NO PREJUDICAL ERROR.

Judge GORE concurs.

Judge HAMPSON concurs in the result only.

Report per Rule 30(e).