[230 N.C. App. 214 (2013)]

IN THE MATTER OF J.L.H.

No. COA13-385

Filed 5 November 2013

**Juveniles—release from commitment—notice**

The trial court erred by denying the juvenile's motion for release from commitment where the Division of Juvenile Justice failed to comply with the notice requirements set out in N.C.G.S. § 7B-2515(a) at the time that it extended the duration of the juvenile's commitment period.

Appeal by juvenile from order entered 19 November 2012 by Judge John Covolo in Nash County District Court. Heard in the Court of Appeals 12 September 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Stephanie A. Brennan, for the State.*

*Geeta N. Kapur, for juvenile-appellant.*

ERVIN, Judge.

Juvenile J.L.H.[1] appeals from an order denying his motion to be released from commitment entered on 19 November 2012. On appeal, James argues that the trial court erred by denying his motion for release on the grounds that the Division of Juvenile Justice failed to comply with the notice requirements set out in N.C. Gen. Stat. § 7B-2515(a) at the time that it extended the duration of his commitment period.[2] After

---

1. J.L.H. will be referred to throughout the remainder of this opinion as James, a pseudonym used for ease of reading and to protect the juvenile's privacy.

2. Although James has advanced a number of challenges to prior adjudication and disposition orders in his brief, none of these issues are properly before us at the time given James' failure to note appeals from those orders in a timely manner. According to N.C. Gen. Stat. § 7B-2602, "[n]otice of appeal shall be given in open court at the time of the hearing or in writing within 10 days after entry of the order." Pursuant to well-established North Carolina law, a " 'failure to give timely notice of appeal . . . is jurisdictional, and an untimely attempt to appeal must be dismissed.' " *In re A.L.*, 166 N.C. App. 276, 277, 601 S.E.2d 538 (2004) (quoting *In re Lynette H.*, 323 N.C. 598, 602. 374 S.E.2d 272, 274 (1988)). As a result, given that the only issue which is properly before us at this time is James' appeal from the 19 November 2012 order denying his motion for release, we will refrain from discussing other details surrounding the history of James' involvement in the juvenile justice system and the facts and circumstances surrounding the entry of the earlier orders which have been challenged in James' brief.

**IN RE J.L.H.**

[230 N.C. App. 214 (2013)]

careful consideration of James' challenges to the trial court's order in light of the record and the applicable law, we conclude that the Division of Juvenile Justice failed to comply with the applicable notice requirement at the time that it extended his commitment period, so that the trial court's order denying his motion for release should be reversed and this case remanded to the Nash County District Court for further proceedings not inconsistent with this opinion.

## I. Factual Background

### A. Substantive Facts

On 9 March 2012, four petitions alleging that James should be adjudicated a delinquent juvenile on the basis of allegations that he had committed the offenses of possession of a Schedule VI controlled substance with the intent to sell or deliver; resisting, delaying, or obstructing an officer; possession of a firearm by a minor; and carrying a concealed weapon were filed. On 15 May 2012, the trial court adjudicated James as a delinquent juvenile after finding beyond a reasonable doubt that he had committed the offenses of possession of a handgun by a minor and carrying a concealed weapon and determining that the possession of a Schedule VI controlled substance with the intent to sell or deliver and resisting, delaying, and obstructing an officer charges should be dismissed. At the dispositional stage of the proceeding, the trial court ordered that James be committed to the custody of the Department of Juvenile Justice for placement in a youth development center for a maximum period of six months. As a result, in the absence of a valid extension, James' six-month commitment period was scheduled to expire on 15 November 2012.

On 15 October 2012, Sonynia Stancil, who served as James' court counselor; Randy Krank, a social worker at the Youth Development Center; and other members of James' treatment team held a meeting with James during which they decided to seek an extension of James' commitment period on the grounds that James was displaying escalating behavioral problems and needed further treatment. More specifically, given that James had acted in a belligerent manner towards members of the facility's staff and other students, his treatment team believed that he needed additional counseling for the purpose of addressing his inability to interact with his peers and with members of the institution staff in a positive manner.

In spite of the fact that James' father was subject to an order requiring him to attend all service plan meetings, he was unable to attend the 15 October 2012 meeting as the result of transportation and work-related

difficulties. Although James' father had requested the Division of Juvenile Justice to provide him with transportation assistance, he did not receive any assistance in addressing these problems. As a result, James' father received permission from Mr. Krank to participate in the service plan meeting by telephone. James' father did not know before the meeting that a request for the extension of James' commitment period would be proposed.

At the service planning meeting, James' father was orally informed of the treatment team's recommendation that James' commitment period be extended, the reasons which underlay this recommendation, and the nature of the treatment that the team recommended that James receive during this additional commitment period. After learning of this recommendation, James' father objected to the proposed extension of James' commitment period on the grounds that the treatment team's recommendation effectively punished James because his father had not been able to attend the meeting. At some point during the meeting, the telephone connection between James' father and the treatment team was disconnected for reasons relating to James' father's employment obligations.

James was provided with a copy of the notes on the proposed extension plan during the treatment team meeting. Had James' father been physically present at the meeting, he would have received a copy of these notes as well. On 17 October 2012, Mr. Krank submitted a formal request for a three month extension of James' commitment period for approval. On 23 October 2012, the extension review committee and Katherine Dudley, who served as the Director of Youth Development Centers for the Division of Juvenile Justice, approved an extension of James' commitment period of no more than six months. Written notice of the extension was mailed to James' parents after the request for an extension of James' commitment period had received official approval. According to Mr. Krank, written notice could not have been mailed to a juvenile's parents prior to official approval of the recommendation request because the ultimate extension plan might, as it did in this instance, change during the approval process. James' attorney did not receive a copy of the extension plan until the morning of the 19 November 2012 hearing.

### B. Procedural History

On 24 October 2012, the Division of Juvenile Justice filed a motion for review requesting approval of the extension of James' commitment period. On 5 November 2012, James filed a motion seeking to be released from his commitment on the grounds that the Division had failed to provide written notice of the proposed extension of the commitment period

**IN RE J.L.H.**

[230 N.C. App. 214 (2013)]

to James and his parents at least 30 days before the last day of his existing commitment period as required by N.C. Gen. Stat. § 7B-2515 and that James had served the maximum term of his initial commitment period.

On 7 November 2012, a hearing was held for the purpose of addressing the issues raised by James' motion for release from commitment. At the conclusion of the hearing, the trial court entered a written order denying James' motion on the grounds that the notice given to James' father over the telephone during the 15 October 2012 meeting constituted sufficient compliance with the notice provisions of N.C. Gen. Stat. § 7B-2515(a). According to the trial court, "[w]hile not in writing, notice to the Juvenile's parent of the Division's intent to extend the Juvenile's term of commitment was properly given by telephone communication on October 15, 2012 in compliance with the terms of N.C. [Gen. Stat.] § 7B-2515." James noted an appeal to this Court from the trial court's order. After being released from the custody of the Division of Juvenile Justice in March 2013, James was placed on one year of post-release supervision.

## II.  Substantive Legal Analysis

In his brief, James argues that the trial court erroneously denied his motion for release on the grounds that the Division of Juvenile Justice violated the notice provisions set out in N.C. Gen. Stat. § 7B-2515(a) in the course of obtaining the extension of his commitment period. More specifically, James argues that his period of commitment was unlawfully extended because the Division failed to provide him and his parents with written notice of the Division's extension plan at least 30 days prior to the end of his maximum commitment period. We believe that James' argument has merit.

## A.  Mootness

As an initial matter, we are required to address the State's contention that, given that James "is no longer committed," his challenge to the denial of his motion for release from commitment has been rendered moot. In essence, the State argues that, since James is no longer being held in the custody of the Division of Juvenile Justice, this Court is unable to provide him with any meaningful relief in the event that we were to uphold the validity of his challenge to the trial court's decision to deny his motion for release. We do not find the State's argument persuasive.

As a general proposition, a pending appeal from a particular judgment or order which has been fully effectuated is moot because a subsequent appellate decision "cannot have any practical effect on the

existing controversy." *In re A.K.*, 360 N.C. 449, 452, 628 S.E.2d 753, 755 (2006) (quoting *Roberts v. Madison Cty. Realtors Ass'n, Inc.*, 344 N.C. 394, 398–99, 474 S.E.2d 783, 787 (1996)). On the other hand, however, "[w]hen the terms of the judgment below have been fully carried out, if collateral legal consequences of an adverse nature can reasonably be expected to result therefrom, then the issue is not moot and the appeal has continued legal significance." *State v. Black*, 197 N.C. App. 373, 375-76, 677 S.E.2d 199, 201 (2009) (citing *In re Hatley*, 291 N.C. 693, 694, 231 S.E.2d 633, 634 (1977)). As a result, "[b]efore determining whether an appeal is moot when the defendant has completed his sentence, it is necessary to determine whether collateral legal consequences of an adverse nature may result." *Black*, 197 N.C. App. at 375, 377 S.E.2d at 201.

In seeking to persuade us of the validity of its mootness argument, the State contends that James would not suffer any adverse collateral consequences in the event that the trial court's order was allowed to stand given that James has already been released and that "any decision in this appeal would not impact the extension of incarceration." In addition, the State argues that, even "if this Court were to determine that the extension had been improper, that would not change the Division's determination that [James] should be subject to one year of supervised release" or affect the amount of supervised release that James has left to serve. As a result, the State argues that James would not receive any benefit whatsoever from a decision upholding the validity of his challenge to the denial of his release motion.

Although the State is correct in asserting that a decision to overturn the denial of James' release motion would not result in his release from commitment or affect the length of the post-release supervision period to which he is subject (against which no challenge has been advanced in James' brief), we are unable to accept its contention that James cannot obtain meaningful relief in the event that we were to decide this case in his favor. The clear impact of the challenged order was to extend the period during which James was committed to the custody of the Division of Juvenile Justice. In the event that the trial court erroneously refused to release James from his commitment to the Division of Juvenile Justice, his release from commitment and the commencement of the one-year period of post-release supervision was delayed for a number of months. As a result, had the trial court granted, instead of denied, James' motion for release, on the grounds that James' period of commitment had been unlawfully extended, he would be much nearer to the end of this one-year period of post-release supervision than is currently the case. In view of the fact that a person subject to post-release supervision must comply with certain significant restrictions and the

fact that any failure on James' part to comply with the conditions of post-release supervision can result in his commitment to the custody of the Division of Juvenile Justice, N.C. Gen. Stat. § 7B-2516 (stating that the juvenile "shall be returned to the Division for placement in a Youth Development Center" in the event that his or her post-release supervision is revoked); *In re D.M.*, 192 N.C. App. 729, 732, 666 S.E.2d 501, 503 (2008) (stating that, "[u]nder the plain language of the statute, the trial court must only determine 'by the greater weight of the evidence that the juvenile has violated the terms of post-release supervision' in order to revoke the juvenile's post-release supervision") (quoting N.C. Gen. Stat. § 7B-2516(b)), the length of a particular juvenile's period of commitment has potential effects which extend well beyond the date upon which he or she is released from the custody of the Division of Juvenile Justice. As a result, a decision by this Court to the effect that James' period of commitment had been improperly extended would, in actuality, have a practical impact on James' life, a determination which precludes us from dismissing his appeal from the denial of his release motion on mootness grounds.

In seeking to persuade us to reach a different result, the State cites *In re W.H.*, 166 N.C. App. 643, 603 S.E.2d 356 (2004), for the proposition that a challenge to the length of a juvenile's incarceration was moot because he had already been released. In *W.H.*, the juvenile argued that the trial court had erred by refusing to order his release from custody pending appeal. *Id.* at 648, 603 S.E.2d at 360. In response, however, we held that the juvenile's challenge to the trial court's order was moot "in light of the fact that the juvenile has already served his Level 3 disposition and was discharged." *Id. W.H.* is readily distinguishable from the present case given the complete absence of any reference to the potential impact of a decision in the juvenile's favor on the length of any post-release supervision to which the juvenile might have been subject or to any other potential adverse collateral consequence which might result from a refusal to overturn the challenged trial court order. In other words, although the record does not suggest that a ruling on the challenged issue in *W.H.* would have had any impact on the juvenile's life, a similar statement cannot be made in this instance. As a result, we conclude that James' appeal has not been rendered moot by his release from his commitment and that we should, for that reason, reach the merits of his challenge to the denial of his motion for release.

## B. Extension of Period of Commitment

The essential issue implicated by James' challenge to the denial of his motion for release was whether the Division had extended his period

of commitment in a lawful manner. The prerequisites for a valid extension of a juvenile's period of commitment are spelled out in N.C. Gen. Stat. § 7B-2515(a), which provides, in pertinent part, that:

> if the Division determines that the juvenile's commitment should be continued beyond the maximum commitment period as set forth in G.S. 7B-2513(a), the Division shall notify the juvenile and the juvenile's parent, guardian, or custodian in writing at least 30 days in advance of the juvenile's eighteenth birthday or the end of the maximum commitment period, of the additional specific commitment period proposed by the Division, the basis for extending the commitment period, and the plan for future care or treatment.

Thus, the essential issue raised by James' challenge to the trial court's order is the extent, if any, to which the Division adequately complied with the provisions of N.C. Gen. Stat. § 7B-2515(a) during the process of obtaining an extension of James' period of commitment.[3]

As a result of the fact that James was subject to a maximum commitment period of six months in accordance with N.C. Gen. Stat. § 7B-2513(a) and the 15 May 2012 order, James would, in the ordinary course of events, have been released on 15 November 2012. Although the record reflects that the members of the treatment team decided to recommend that James' period of commitment be extended at the 15 October 2012 meeting, that recommendation was not approved by the relevant officials within the Division until 23 October 2012. In addition, even though the notes generated in connection with the 15 October 2012 treatment team meeting were provided to James on that date, no written notice of the final extension decision and the nature of the associated extension plan was provided to either James or his father until the date upon which the Division officially approved the treatment team's recommendation. As a result, as the Division recognized at the time of the proceedings before the trial court, the undisputed information contained in the present record establishes that, even if the extension decision was

---

3. As we will discuss in more detail below, we believe that the proper resolution of the ultimate issue raised by James' challenge to the denial of his motion for release is the manner in which the notice provisions of N.C. Gen. Stat. § 7B-2515(a) should be construed. According to well-established North Carolina law, "[i]ssues of statutory construction are questions of law, reviewed de novo on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010). " 'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

**IN RE J.L.H.**

[230 N.C. App. 214 (2013)]

made at the time of the treatment team meeting rather than on the date upon which the team's recommendation received official approval,[4] the notice provided in connection with its request for an extension of James' period of commitment was "under the statutorily mandated time frame." Thus, we conclude that the Division failed to comply with the provisions of N.C. Gen. Stat. § 7B-2515(a) at the time that it attempted to extend James' period of commitment.

In attempting to persuade us to reach a different conclusion, the State argues, consistently with the logic adopted by the trial court, that the copies of the meeting notes provided to James during the 15 October 2012 meeting and the oral notice provided to James' father during that meeting constituted sufficient compliance with the notice requirements set out in N.C. Gen. Stat. § 7B-2515(a) to support a decision to uphold the denial of James' release motion. Assuming, without in any way deciding, that the provision of the notes developed at the 15 October 2012 meeting constituted the provision of adequate notice to James, we must still determine whether the provision of oral notice of the Division's extension decision to James' father constitutes sufficient compliance with the relevant statutory provision to support a decision to uphold the extension of James' commitment period, a decision which requires us to construe the relevant language set out in N.C. Gen. Stat. § 7B-2515(a).

"The primary goal of statutory construction is to effectuate the purpose of the legislature in enacting the statute." *State v. Hooper*, 358 N.C. 122, 125, 591 S.E.2d 514, 516 (2004) (citing *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 574, 573 S.E.2d 118, 121 (2002)). The first step which must be taken in the statutory construction process is examining the language utilized by the General Assembly in drafting the relevant statutory provision. *Correll v. Division of Soc. Servs.*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992). "It is well settled that[,] '[w]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning.' " *In re Estate of Lunsford*, 359 N.C. 382, 391, 610 S.E.2d 366, 372 (2005) (quoting *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990)).

---

4. In view of our determination that the Division failed to provide adequate notice of the extension of James' commitment period to James and his father, we need not make a definitive determination concerning the extent to which the extension decision was made on 15 October 2012 or 23 October 2012. However, we have difficulty discerning how a treatment team recommendation which is subject to internal Division review and material alteration before becoming effective can be treated as a definitive decision that a juvenile's period of commitment should be extended and that a specific extension plan should be approved.

**IN RE J.L.H.**

[230 N.C. App. 214 (2013)]

As we have already noted, N.C. Gen. Stat. § 7B-2515(a) clearly and unambiguously states that notice of the extension of a juvenile's period of commitment shall be provided to both the juvenile and his parents "in writing at least 30 days in advance" of the juvenile's scheduled release date. N.C. Gen. Stat. § 7B-2515(a). In view of the fact that the relevant statutory language clearly and unambiguously requires that the notice of the proposed extension provided to the juvenile and his or her parents be in writing, we "must construe the statute using its plain meaning." *Estate of Lunsford*, 359 N.C. at 391, 610 S.E.2d at 372. The State attempts to avoid the difficulties arising from the literal meaning of the relevant statutory language by suggesting, in reliance on decisions such as *State v. Inman*, 174 N.C. App. 567, 621 S.E.2d 306 (2005) (stating that "the importance of the provision involved may be taken into consideration" in "determining the mandatory or directory nature of a statute"), *disc. review denied*, 360 N.C. 652, 638 S.E.2d 907 (2006), that the notice provisions contained in N.C. Gen. Stat. § 7B-2515(a) should be deemed directory rather than mandatory on the theory that strict compliance with those notice provisions was not of any particular importance to the prosecution of a subsequent challenge to the Division's extension decision. However, since, "[a]t a minimum, due process requires adequate notice of the charges and a fair opportunity to meet them," *In re Lamm*, 116 N.C. App. 382, 386, 448 S.E.2d 125, 128 (1994), *aff'd*, 341 N.C. 196, 458 S.E.2d 921 (1995), *cert. denied*, 516 U.S. 1047, 116 S. Ct. 708, 133 L. Ed. 2d 663 (1996), and since the notice provisions of N.C. Gen. Stat. § 7B-2515(a) represent an attempt to address the same considerations that underlie fundamental due process protections, we are unwilling to construe the notice provisions of N.C. Gen. Stat. § 7B-2515(a) as directory rather than mandatory.

In addition, the State argues that we should overlook the difficulties created by the absence of timely written notice to James' parents by pointing out that James' father would have received the required written notice on 15 October 2012 had he attended the treatment team meeting in person rather than telephonically. However, we are unable to read any exception to the statutory requirement that notice of the extension of a juvenile's commitment period be given to the juvenile's parents in writing into the relevant statutory language. Moreover, we note that the Division had advance notice that James' father would be unable to attend the treatment team meeting without assistance from the Division, which was not forthcoming. Finally, given that the Division had not discussed the option of extending James' period of commitment prior to the treatment team meeting, James' father could not have been aware that the subject of extending James' period of commitment would

**IN RE J.L.H.**

[230 N.C. App. 214 (2013)]

be under consideration at the treatment team meeting. As a result, for all of these reasons, we conclude that the fact that James' father received oral notice of the treatment team's recommendation that James' period of commitment should be extended does not provide any justification for a decision to overlook the Division's failure to provide written notice of the extension decision to James' father in a timely manner and that the trial court erred by reaching a contrary conclusion.

Lastly, the State argues that, even if the notice provided to James' father was technically deficient, we should decline James' invitation to overturn the denial of his release motion on the basis of the logic enunciated in our recent decision in *Fisher v. Town of Nags Head*, __ N.C. App. __, 725 S.E.2d 99, *appeal dismissed and disc. review denied*, __ N.C. __, 731 S.E.2d 166 (2012). In *Fisher*, the plaintiffs contended that a notice of condemnation that they had received from the defendant failed to comply with the requirements of N.C. Gen. Stat. § 40A-40. *Id.* at __, 725 S.E.2d at 104-05. After acknowledging that the notice which had been provided in *Fisher* suffered from technical deficiencies, we declined to award any relief to the plaintiffs given our inability to "find that the plaintiffs were prejudiced by the notice." *Id.* at __, 731 S.E.2d at 104. We do not believe that *Fisher* controls in this instance given that the statutory provisions at issue there, unlike the notice provisions contained in N.C. Gen. Stat. § 7B-2515(a), specifically provide that "[a]n owner is entitled to no relief because of any defect or inaccuracy in the notice unless the owner was actually prejudiced by the defect or inaccuracy." N.C. Gen. Stat. § 40A-40. As a result, given that nothing in N.C. Gen. Stat. § 7B-2515(a) authorizes us to overlook the existence of deficient notice in this case based on any failure on James' part to making a showing of actual prejudice, we lack explicit statutory authority to absolve the State from the Division's failure to comply with the relevant notice requirements based on the logic adopted in *Fisher*.

In addition, to the extent that traditional harmless error analysis should be undertaken in this instance, we are unable to conclude that the Division's error should be excused on harmlessness grounds. As we have already noted, the provision of adequate notice has a direct impact upon the ability of James and his parents to contest the Division's effort to extend the length of his commitment period as authorized by N.C. Gen. Stat. § 7B-2515(c) (stating that "[t]he juvenile and the juvenile's parent, guardian, or custodian may request a review by the court of the Division's decision to extend the juvenile's commitment beyond the juvenile's . . . maximum commitment period, in which case the court shall conduct a review hearing" and "may modify the Division's decision

**IN RE J.L.H.**

[230 N.C. App. 214 (2013)]

and the juvenile's maximum commitment period"). In fact, the record reflects that James' trial counsel did not receive a copy of the Division's extension plan until the morning of the hearing on James' release motion, a development which has obvious implications for James' ability to adequately contest the Division's extension decision. As a result, given that the trial court committed prejudicial error by denying James' release motion and that we are unable to conclude that the trial court's error was harmless, we hold that the trial court's order should be reversed and that this case should be remanded to the Nash County District Court for further proceedings not inconsistent with this opinion.[5]

### III. Conclusion

Thus, for the reasons set forth above, we conclude that the trial court erred by denying James' motion for release from commitment. As a result, the trial court's order should be, and hereby is, reversed, and this case should be, and hereby is, remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Judges ROBERT N. HUNTER, JR., and DAVIS concur.

---

5. As a result of the fact that "[p]ost-release supervision shall be terminated by an order of the court," N.C. Gen. Stat. § 7B-2514(g), the court below must, on remand, order an adjustment in the amount of time to which James is subject to post-release supervision by crediting the amount of time from his initial 15 November 2012 release date and the March 2013 date upon which he was actually released against his one-year term of post-release supervision.