IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-267

No. COA20-299

Filed 15 June 2021

Union County, No. 09 JB 44

IN THE MATTER OF: K.N.H.

Appeal by juvenile from orders entered 23 May 2019 by Judge William F. Helms, III in Union County District Court. Heard in the Court of Appeals 11 May 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Erika N. Jones, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Hannah H. Love, for Defendant-Appellant.*

CARPENTER, Judge.

¶ 1    Appellant K.N.H. appeals from an order on motion for review (the "Order on Motion for Review") dated 23 May 2020, concluding K.N.H. violated the conditions of probation and ordering an entry of a Level 3 disposition, and from a disposition and commitment order (the "Disposition and Commitment Order") entered 23 May 2020 committing him to a youth development center ("YDC"). On appeal, he argues the

trial court erred in imposing a Level 3 disposition based solely on its finding that he had violated an oral condition of probation. Further, he asserts that the trial court erred in entering the Level 3 disposition by failing to orally state the duration of the disposition at the time of commitment to the YDC, as statutorily required. For the following reasons, we affirm.

## I. Factual & Procedural Background

¶ 2     In pertinent part, the record reveals the following: on 14 December 2017, an adjudication hearing was held in connection with four juvenile petitions the State filed against K.N.H., including common law robbery. K.N.H. admitted to the lesser offense of larceny from a person for the common law robbery allegation. The State dismissed the remaining three charges against him. The trial court entered a Level 1 disposition and placed K.N.H. on probation for a period of twelve months.

¶ 3     On 3 May 2018, the State filed a juvenile petition against K.N.H. alleging one count of possession of stolen goods. On 28 June 2018, K.N.H. admitted to the offense of possession of stolen goods. The trial court ordered K.N.H. to Level 2 probation for twelve months.

¶ 4     On 23 August 2018, the State filed three additional petitions against K.N.H. alleging attempted robbery with a dangerous weapon, minor in possession of a handgun, and assault by pointing a gun. On 27 September 2018, the court conducted an adjudication hearing. At the hearing, the offense of robbery with a dangerous

weapon was amended to the offense of attempted common law robbery pursuant to K.N.H.'s *Alford* plea.[1] K.N.H. admitted to the offense of possessing a handgun, and the State dismissed the remaining charge. The case was continued for disposition until 11 October 2018.

On 11 October 2018, the trial court entered its dispositional order and placed K.N.H. on Level 2 probation for a period of twelve months under the previous terms and conditions as well as the additional conditions imposed by the 11 October 2018 supplemental order for conditions of probation (the "Supplemental Order"), which the court incorporated by reference and attached to the dispositional order. The Supplemental Order required K.N.H. to, *inter alia,* "submit to [e]lectronic [m]onitoring for 90 days and comply with all conditions set by the [c]ourt [c]ounselor."

On 9 January 2019, a juvenile court counselor filed a motion for review alleging K.N.H. had "violated the conditions imposed by the [c]ourt by receiving new delinquent charges that include[d] using a handgun." Further, it was based on K.N.H.'s violations of the conditions imposed by the 11 October 2018 dispositional order, including remaining on good behavior and not violating any laws; not possessing a firearm, explosive device, or other deadly weapon; and submitting to

---

[1] In *North Carolina v. Alford,* 400 U.S. 25, 37–38, 27 L. Ed. 2d 162, 171–72, 91 S. Ct. 160, 167–68 (1970), the Supreme Court of the United States held a defendant may enter a "plea containing a protestation of innocence" when the defendant intelligently concludes that a guilty plea is in his best interest, and the record "contains strong evidence of actual guilt."

electronic monitoring for ninety days and complying with all conditions set by the court counselor.

¶ 7     On 17 January 2019, the trial court held a probation review hearing, and K.N.H. was ordered to "remain in secure custody" due to his status as a "danger to persons."  K.N.H. remained in secure custody until the adjudication and secure hearing on 23 May 2019.

¶ 8     On 23 May 2019, the trial court held a hearing in connection with the motion for review before the Honorable W. Robert Bell Pomeroy in Union County District Court.  The prosecutor for the State informed the court that it was proceeding only on the allegation that K.N.H. willfully violated the condition of submitting to electronic monitoring.  K.N.H. denied the allegation.

¶ 9     At the hearing, Stephanie Missick ("Ms. Missick"), the juvenile court counselor over K.N.H.'s case, testified K.N.H. and his parent signed a form for the monitoring equipment in case it was damaged and, at that time, they "talked about the [probation] conditions."  She mentioned, "[K.N.H.] wasn't to leave unless he was with his parent."  If K.N.H. was given "time out," meaning time to be outside of his home on electronic monitoring, Ms. Missick "would have to go in the computer and put time out, he had to be with his parent."  According to Ms. Missick, she gave K.N.H. time out near the holidays, including multiple days in December 2018 and on 1 January 2019.  She also testified that when K.N.H. was placed on the electronic monitoring,

she told him, "If you go anywhere, you've got to be with [a parent]." Finally, Ms. Missick testified that K.N.H. told her that he "did leave" and that "[h]e wasn't with his dad" for the entire "time out" period on 1 January 2019.

¶ 10 K.N.H.'s probation violation in this case occurred on 1 January 2019. Ms. Missick scheduled K.N.H. time out from 11:00 a.m. to 7:00 p.m. in light of the New Year's Day holiday. K.N.H.'s mother testified that she had K.N.H.'s maternal grandmother take K.N.H. to the Icemorlee area of Monroe to visit his father and family because she did not have a vehicle herself. She further testified that his grandmother saw K.N.H.'s father at a gas station, and she dropped K.N.H. off with him. K.N.H.'s father took him to his aunt's house where they would have dinner with family. When the prosecutor asked K.N.H.'s mother if she "understood that when [K.N.H.] was home with [her] he was supposed to be with [her]", she responded, "[a]nd he was. Yes, ma'am."

¶ 11 According to K.N.H.'s father, once he picked up K.N.H. from the gas station at about 1:00 p.m., they went to K.N.H.'s aunt's house for a dinner with 15 or 16 family members. K.N.H.'s father testified he last saw K.N.H. "standing on the porch" of the house at around 2:00 p.m. He further testified he did not know where K.N.H. was from approximately 2:00 p.m. to 5:00 p.m. When asked if he "knew that [he] had to have eyes on [K.N.H.] and know where he was at all times," K.N.H's father responded, "I didn't have conversations, but I was there. I heard things." K.N.H.'s father

acknowledged that both he and K.N.H. were present when Ms. Missick told them that K.N.H. had to be with a parent at all times when he was on time out.

After hearing closing arguments, the court found K.N.H. "was in willful violation of [his] probationary conditions." Consequently, the court committed K.N.H. to a YDC for an indefinite period.

On 23 May 2019, the Honorable Judge Williams F. Helms III entered the Order on Motion for Review, which found the allegations were proven by the greater weight of the evidence. Additionally, Judge Helms entered the written Disposition and Commitment Order, imposing a Level 3 disposition and committing K.N.H. to a YDC for a minimum period of six months and a maximum period until his eighteenth birthday. K.N.H. filed a timely, written notice of appeal from the 23 May 2019 Order on Motion for Review and Disposition and Commitment Order.

## II. Jurisdiction

This Court has jurisdiction to address the juvenile's appeal from the final orders pursuant to N.C. Gen. Stat. § 7B-2602 (2019) and N.C. Gen. Stat. § 7B-2604 (2019).

## III. Issues

The issues on appeal are whether (1) the trial court erred by entering a Level 3 disposition based solely on its finding that K.N.H. violated a condition of probation for which he did not receive written notice; and (2) the trial court erred by entering a

Level 3 disposition without stating the precise duration of K.N.H.'s commitment to the YDC in its oral order of disposition.

## IV. Standard of Review

"When a juvenile argues to this Court that the trial court failed to follow a statutory mandate, the error is preserved and is a question of law reviewed *de novo*. Under a *de novo* review, the [C]ourt considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *In re E.M.*, 263 N.C. App. 476, 479, 823 S.E.2d 674, 676 (2019) (citations omitted) (emphasis added).

## V. Violation of Electronic Monitoring Probation Condition

In his first argument, K.N.H. contends the trial court erred in failing to follow N.C. Gen. Stat. § 7B-2512(a), which mandates the court to "state with particularity" the terms and conditions of probation in both the oral and written orders of disposition since probation is a "precise term[ ] of the disposition . . . ." N.C. Gen. Stat. § 7B-2512(a) (2019). Furthermore, he asserts that since the trial court failed to make such written findings, the condition of probation requiring him to be in the presence of one of his parents while on electronic monitoring is invalid and could not be willfully violated; thus, the trial court abused its discretion by entering a Level 3 disposition based on K.N.H.'s violation of that condition of probation. The State argues that this issue was not properly preserved for appellate review. The State contends, even if it were properly preserved, the probation condition imposed by the

trial court was valid and enforceable, and the violation of the condition permitted the court to enter a Level 3 disposition.

After careful review, we find K.N.H.'s argument that the trial court failed to follow a statutory mandate is preserved, *see In re E.M.*, 263 N.C. App. at 479, 823 S.E.2d at 676, and agree with the State that the trial court's order of electronic monitoring was consistent with the pertinent statutory requirements.

"The purpose of dispositions in juvenile actions is to design an appropriate plan to meet the needs of the juvenile and to achieve the objectives of the State in exercising jurisdiction, including the protection of the public." N.C. Gen. Stat. § 7B-2500 (2019). The disposition developed by the trial court for each case is designed to "[p]romote public safety"; "[e]mphasize[ ] accountability and responsibility" of the juvenile's parents and guardians as well as the juvenile; and "[p]rovide[ ] appropriate consequences, treatment, training and rehabilitation" for the juvenile. N.C. Gen. Stat. § 7B-2500 (1)–(3).

N.C. Gen. Stat. § 7B-2512 provides the requirements for the dispositional order:

> [t]he dispositional order shall be in writing and shall contain appropriate findings of fact and conclusions of law. The court shall state with particularity, both orally and in the written order of disposition, the precise terms of the disposition including the kind, duration, and the person who is responsible for carrying out the disposition and the person or agency in whom custody is vested.

N.C. Gen. Stat. § 7B-2512(a).

¶ 21    A "court exercising jurisdiction over a juvenile who has been adjudicated delinquent" may impose certain dispositional alternatives in accordance with N.C. Gen. Stat. § 7B-2508, including "plac[ing] the juvenile on probation under the supervision of a juvenile court counselor, as specified in [N.C. Gen. Stat. § 7B-2510]." N.C. Gen. Stat. § 7B-2506(8) (2019).

¶ 22    N.C. Gen. Stat. § 7B-2510 provides the conditions of probation for the underlying dispositional alternatives upon which a delinquent juvenile may be placed pursuant to N.C. Gen. Stat. § 7B-2506(8). Under subsection (a), the conditions of probation ordered by a court must be "related to the needs of the juvenile and [be] reasonably necessary to ensure that the juvenile will lead a law-abiding life." N.C. Gen. Stat. § 7B-2510(a). Under subsection (b), the court may impose the "regular conditions of probation specified in subsection (a)," or it may choose from certain other conditions. N.C. Gen. Stat. § 7B-2510(b). One such condition of probation a court may order in a juvenile proceeding under subsection (b) is the juvenile "[c]ooperate with electronic monitoring" so long as the juvenile is "directed to comply by the chief court counselor" and "the juvenile is subject to Level 2 dispositions pursuant to [N.C. Gen. Stat. § 7B-2508] . . . ." N.C. Gen. Stat. § 7B-2510(b)(4).

¶ 23    "When the language of a statute is clear and unambiguous, there is no room

for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388–89 (1978) (citation omitted).

In this case, the trial court ordered K.N.H. to submit to electronic monitoring for ninety days pursuant to N.C. Gen. Stat. § 7B-2510(b) and to comply with all conditions set by the court counselor in the court's Supplemental Order. The Supplemental Order also specifically stated that if K.N.H. were to "violate[ ] curfew or any conditions set forth by the court counselor[, then] he shall be placed back in detention."

N.C. Gen. Stat. § 7B-2506(8) "clear[ly] and unambiguous[ly]" allows "place[ment of] the juvenile on probation under the supervision of a juvenile court counselor." *See Id*. at 239, 244 S.E.2d at 389–90; N.C. Gen. Stat. § 7B-2506(8). Furthermore, N.C. Gen. Stat. § 7B-2510(b) allows a court to impose the "[c]ooperat[ion] with electronic monitoring" as a condition of probation in certain circumstances. Here, the statutory requirements were fulfilled for the court to impose electronic monitoring because K.N.H. was subject to a Level 2 disposition, and the chief court counselor directed him to comply with the condition of probation. Based on the plain language of the statute, only the specific condition of probation upon which the juvenile is placed—in this case, electronic monitoring—was required

to be precisely identified in the dispositional order. The Juvenile Code does not require that the disposition include the precise terms and conditions or rules of electronic monitoring that the court counselor imposes on the juvenile. Had the General Assembly intended district courts to include such detailed conditions, it would have included such language in the statute. *See e.g.*, N.C. Gen. Stat. § 7B-2506(6) (stating a dispositional alternative may include an order for "the juvenile to perform up to 100 hours supervised community service consistent with the juvenile's age, skill, and ability, specifying the nature of the work and the number of hours required").

¶ 26      In arguing that specific juvenile conditions of probation must be in writing to be valid, K.N.H. cities to the parallel adult criminal provision on probation conditions, which specifically requires that "[a] defendant released on supervised probation . . . be given a written statement explicitly setting forth the conditions on which he is being released" as well as a "written statement setting forth [any] modifications." *See* N.C. Gen. Stat. § 15A-1343(c). This argument is without merit. Since the General Assembly did not expressly provide the same requirements for juvenile probation in the Juvenile Code as the Criminal Procedure Act provides for adult criminals, we give the Juvenile Code statute its "plain and definite meaning" without interpolating language from the criminal statutes. *See In re Banks*, 295 N.C. at 239, 244 S.E.2d at 388.

Additionally, "[t]he General Assembly has demonstrated through the Juvenile Code its desire to give the courts a broad range of alternatives in juvenile delinquency cases, with the manifest goal of creating optimal solutions tailored to the particular circumstances of each wayward child." *In re D.L.H.*, 364 N.C. 214, 219, 694 S.E.2d 753, 756 (2010) (holding the adult criminal statute governing credit for time served before disposition is inapplicable to juvenile proceedings based on the plain language of the Criminal Procedure Act and the Juvenile Code combined with the "legislative policy of affording the courts a wide variety of options in juvenile matters").

Like our Supreme Court in *In re D.L.H.*, we refuse to limit the options of the district courts by subjecting delinquent juveniles to adult criminal statutes where there is no statutory indication that a given criminal statute applies to a juvenile proceeding. Requiring the courts to set forth the specific rules, terms, and conditions of each dispositional alternative or condition of probation when not statutorily mandated would conflict with the goals of the Juvenile Code to provide "a broad range of alternatives" in juvenile proceedings and would interfere with the district court's power to delegate certain tasks and responsibilities to third parties involved in the dispositional plans of delinquent juveniles. *See id.* at 219, 694 S.E.2d at 756. Moreover, in its role as an appellate court, the Court of Appeals is limited to interpreting statutes—not creating or enacting statutes as these are functions reserved for the legislatures. *Share v. N.C. State Univ. Veterinary Teaching Hosp.*,

219 N.C. App. 117, 127, 723 S.E.2d 352, 358 (2012) ("This Court is an error-correcting court, not a law-making court.").

Relying on the unpublished case of *In re E.M.*, K.N.H. next maintains that oral notice of a probation condition was insufficient because "[a] juvenile must receive written notice of a condition of probation for the condition to be valid." We disagree.

In the case of *In re E.M.*, the trial court judge orally announced that the juvenile was to cooperate with electronic monitoring if directed to do so by the chief court counselor. 227 N.C. App. 649, 745 S.E.2d 374, No. COA13-13, 2013 N.C. App. LEXIS 600, at *11-12 (N.C. App. June 4, 2013) (unpublished). Although the oral announcement of the disposition by the trial court judge was properly given, the written disposition did not provide that the juvenile was subject to electronic monitoring at the discretion of the court counselor. *Id.* at *11. Our Court held that "[b]ecause the written disposition order d[id] not require [electronic monitoring as a] condition of probation," the oral order was invalid and inapplicable to the juvenile since it violated the statutory mandate imposed by N.C. Gen. Stat. § 7B-2510(b)(4). *Id.* at *11.

In the instant case, unlike *In re E.M.*, there is a written disposition order requiring K.N.H. to cooperate with electronic monitoring and all conditions set by the court counselor. The parties do not dispute whether K.N.H. received oral notice of the condition to submit to electronic monitoring. Rather, the parties disagree as to

whether "all conditions set by the [c]ourt [c]ounselor" pursuant to the Supplemental Order were required to be in writing to be valid, particularly the condition that K.N.H. had to be in the presence of one of his parents while on electronic monitoring leave. Therefore, we do not find *In re E.M.* on point or persuasive in the case *sub judice*.

¶ 32        Our Court has held that a trial court may allow a juvenile court counselor to impose certain conditions and make certain determinations with respect to the juveniles they supervise so long as the court does not improperly delegate its authority when the statute provides the power and discretion to order a dispositional alternative or condition of probation is with the court. *See In re M.A.B.*, 170 N.C. App. 192, 194–95, 611 S.E.2d 886, 887–88 (2005) (affirming a disposition ordering a juvenile to "cooperate and participate in a residential treatment program as directed by [the] court counselor or mental health agency" where the "specifics of the day-to-day program" were left to the discretion of the court counselor); *In re Hartsock*, 158 N.C. App. 287, 291–92, 580 S.E.2d 395, 398–99 (2003) (reversing in part a dispositional order where the trial court ordered the juvenile to cooperate with placement in a residential treatment facility but vested counselors with the discretion of determining whether to order the placement).

¶ 33        In *In re S.R.S.*, we considered the underlying conditions of probation terms entered pursuant to N.C. Gen. Stat. § 7B-2510 and considered whether the trial court

impermissibly delegated its authority in ordering those conditions. 180 N.C. App. 151, 157–60, 636 S.E.2d 277, 282–84 (2006). We noted that although the *S.R.S.* Court considered whether the trial court properly ordered conditions of probation under N.C. Gen. Stat. § 7B-2510, the case of *In re Hartsock*, 158 N.C. App. 287, 580 S.E.2d 395 (2004), which dealt with the trial court's discretion to order dispositional alternatives under N.C. Gen. Stat. § 7B-2506, was nevertheless "persuasive and applicable" to its analysis. *In re S.R.S.*, at 158, 636 S.E.2d at 283. The record in *In re S.R.S.* failed to support placing conditions on the juvenile for an out-of-home placement and cooperation with counseling and assessments as recommended by the court counselor. *Id.* at 159–60, 636 S.E.2d at 283–84. However, we upheld a condition of probation ordered by the trial court which stated that, "the juvenile abide by any rules set out by the Court Counselor and the juvenile's parents . . . ." *Id.* at 158–59, 636 S.E.2d at 283. We reasoned that the condition imposing rules set by a court did "not vary substantially from that allowed per [N.C. Gen. Stat. § 7B-2510(a)(3)]." *Id.* at 159, 636 S.E.2d at 283. We reversed the probation conditions for out-of-home placement and cooperation with counseling and assessments in the event they were not already mooted by the expiration of the juvenile's probation term. *Id.* at 159–60, 636 S.E.2d at 283–84.

¶ 34        Here, the trial court continued K.N.H.'s Level 2 probation on 11 October 2018 for an additional 12-month period under the previously ordered terms and conditions

in addition to new terms and conditions found in the Supplemental Order, including the condition that K.N.H. "submit to [e]lectronic [m]onitoring for 90 days and comply with all conditions set by the [c]ourt [c]ounselor." The trial court did not vary the condition of probation from that allowed by statute. *See In re S.R.S.*, 180 N.C. App. at 159, 636 S.E.2d at 283; *see also* N.C. Gen. Stat. § 7B-2510(b)(4). The trial court properly ordered electronic monitoring and appropriately delegated the task of supervision of the electronic monitoring to K.N.H.'s court counselor. The specific details concerning the electronic monitoring rules, after the condition of probation was ordered by the court, were properly delegated to the juvenile court counselor. *See In re M.A.B.*, 170 N.C. App. at 192, 611 S.E.2d at 886. Therefore, we hold the trial court properly entered a Level 3 disposition solely on K.N.H.'s violation of the specific terms and conditions set forth by the juvenile court counselor with respect to his electronic monitoring condition of probation.

## VI. Oral Announcement of YDC Commitment Duration

In his second argument, K.N.H. asserts the trial court erred in "fail[ing] to state with particularity the precise duration of [his] commitment to YDC in open court"; thus, "the Level 3 disposition must be vacated." The State contends this argument is moot since K.N.H. was released from the YDC on 1 June 2020 and placed on post-release supervision. Alternatively, the State argues that the trial court substantially complied with N.C. Gen. Stat. § 7B-2512, and K.N.H. cannot show

prejudice resulting from the trial court's failure to include his "maximum commitment time in its oral pronouncement during the disposition."

## A. Mootness

We first address the State's contention that K.N.H.'s challenge to the Level 3 disposition has been rendered moot on the basis that he was released from the YDC on 1 June 2020. The State argues that any error related to the disposition and commitment order cannot be cured since "[K.N.H.] already served his entire commitment at a [YDC]." We disagree. Although the record is unclear as to whether K.N.H. continues to be subject to post-release supervision, there remains a possibility he is under supervision, or faces another collateral legal consequence, resulting from the alleged error. *See In re S.R.S*, 180 N.C. App. at 157–58, 636 S.E.2d at 282 (hearing a juvenile's arguments related to conditions of probation even though the Court of Appeals was uncertain whether the issues were mooted due to the juvenile's release from custody and probation).

Generally, "when the terms of a challenged trial court judgment have been carried out, a pending appeal of that judgment is moot because the appellate court decision cannot have any practical effect on the existing controversy." *In re A.K.*, 360 N.C. 449, 452, 628 S.E.2d 753, 755 (2006) (citation and quotation marks omitted). However, in cases where "the continued existence of the judgment itself may result in collateral legal consequences for the appellant" or where there are "[p]ossible

adverse consequences flowing from [the] judgment," there continues to be a live controversy, which prevents the case from becoming moot. *Id.* at 452, 628 S.E.2d at 755. For example, a juvenile's appeal from a disposition and commitment order would not become moot where the juvenile served his sentence but faced a possibility of "adverse consequence flowing from a judgment," such as post-release supervision. *See id.* at 452, 629 S.E.2d at 755; *see also In re J.L.H.*, 230 N.C. App. 214, 219, 750 S.E.2d 197, 201 (2013) (holding a juvenile's appeal from a court's denial of his motion to release was not rendered moot by his release from commitment to a YDC where the juvenile had to comply with conditions of post-release supervision).

¶ 38        The State relies on *In re Swindell* as support for its argument that K.N.H.'s challenge to the trial court's oral pronouncement is rendered moot. 326 N.C. 473, 390 S.E.2d 134 (1990). In *In re Swindell*, the juvenile contended that the trial court erred in committing him "without first fully considering possible alternative treatment measures . . . ." *Id.* at 474, 390 S.E.2d at 135. Our Supreme Court held the issue was rendered moot since the juvenile had already been released from custody. *Id.* at 474, 390 S.E.2d at 135. The opinion makes no mention of the juvenile facing post-release supervision or any other "[p]ossible adverse consequences flowing from [the] judgment." *See In re A.K.*, 360 N.C. at 452, 629 S.E.2d at 755. Therefore, *In re Swindell* is distinguishable from the instant case, because here, a potential adverse consequence of the disposition on the juvenile—specifically, the possibility of post-

release supervision—has been identified by the appellant, K.N.H.

¶ 39 Here, K.N.H.'s date of commitment was 23 May 2019, and he was released from the YDC on post-release supervision on 1 June 2020. The post-release supervision was to be in effect for a minimum of three months and maximum of one year. However, we are unable to determine, based on the record and its supplement, whether K.N.H. continues to be subject to post-custody supervision. Since it is possible K.N.H. continues to be on post-release supervision or faces other potentially adverse consequences from the purported sentencing error, we will hear the merits of his appeal although we are aware the "passage of time may have rendered the issue . . . moot." *In re Lineberry*, 154 N.C. App. 246, 256, 572 S.E.2d 229, 236 (2002) (recognizing the "passage of time may have rendered the issue of [a] juvenile's custody pending appeal moot").

B. Failure to Comply with N.C. Gen. Stat. §§ 7B-2513(a4) and 7B-2512(a)

¶ 40 On appeal, K.N.H. argues the trial court committed reversible and prejudicial error by not adhering to the statutory mandates set out in N.C. Gen. Stat. §§ 7B-2513(a4) and 7B-2512(a). Specifically, the trial court judge failed notify K.N.H. of the precise duration of his commitment to the YDC at the 23 May hearing when the court orally announced the disposition. The State concedes "the trial court did not include [K.N.H.'s] maximum commitment time in its oral pronouncement," but contends K.N.H. cannot show any prejudice resulting from the trial court's error. We agree

with the State that the juvenile has not sufficiently shown prejudice stemming from the error.

¶ 41 As previously stated above, N.C. Gen. Stat. § 7B-2512 requires, *inter alia*, the courts to "state with particularity, both orally and in the written order of disposition, the precise terms of the disposition including the kind[ and] duration . . . ." N.C. Gen. Stat. § 7B-2512(a). Similarly, N.C. Gen. Stat. § 7B-2513 provides, *inter alia*, "[a]t the time of commitment to a youth development center, the court shall determine the maximum period of time the juvenile may remain committed . . . and shall notify the juvenile of that determination." N.C. Gen. Stat. § 7B-2513(a4).

¶ 42 In this case, the trial court made the following pertinent statement in open court when it announced K.N.H.'s disposition:

> In this case, I'm going to commit the juvenile . . . to the Division of Adult Probation of Juvenile Justice for placement in a Youth Development Center for an indefinite period and order that you cooperate with all the recommendations for any counseling while in YDC, as well as on post-release; submit to random drug screens on post-release; and if the Chief Court Counselor requests it, I'll order you to submit to electronic monitoring for at least 60 days when placed on post-release supervision.

¶ 43 Since the trial court only provided the placement in the YDC would be for an "indefinite period," it failed to meet the statutory requirements to "determine the maximum period of time [K.N.H. was to] remain committed" and to state the "precise terms of the disposition including the . . . duration." *See* N.C. Gen. Stat. §§ 7B-2512(a),

7B-2513(a4).

## C. Prejudicial Error

K.N.H. argues the trial court's failure in announcing the precise duration of his commitment was prejudicial because it "denied [him] the right to be present when the trial court selected his disposition," thus, he was "deprived of the opportunity to ask the judge questions about the Level 3 disposition."

We recognize North Carolina courts have made clear that the "State has a greater duty to protect the rights of a respondent in a juvenile proceeding than in a criminal proceeding." *State v. Fincher*, 309 N.C. 1, 24, 305 S.E.2d 685, 699 (1985) (citation omitted); *see also In re T.E.F.*, 359 N.C. 570, 614 S.E.2d 296 (2005); *In re Meyers*, 25 N.C. App. 555, 558, 214 S.E.2d 268, 270 (1975). However, we reject K.N.H.'s contention that any time "[a] trial court violates a statutory mandate at a [juvenile] dispositional hearing, the juvenile is not required to make a[ ] prejudice showing, as the error is prejudicial *per se*." *See In re J.L.B.M.*, 176 N.C. App. 613, 628, 627 S.E.2d 239, 248 (2006) (noting the trial court's violation of N.C. Gen. Stat. § 7B-2605 had "no effect on the juvenile's adjudication or disposition"); *In re J.J.*, 216 N.C. App. 366, 376, 717 S.E.2d 59, 66 (2011) (holding the trial court's failure to bifurcate its delinquency proceedings was non-prejudicial error).

K.N.H. maintains the trial court's failure to adhere to the statutory mandates constitutes reversible, prejudicial error and cities to *In re W.L.M.*, 218 N.C. App. 455,

721 S.E.2d 764, COA11-723, 2012 N.C. App. LEXIS 169 (N.C. App. Feb. 7, 2012) (unpublished opinion); *In re B.P.*, 169 N.C. App. 728, 612 S.E.2d 328 (2005); *In re J.L.B.M.*, 176 N.C. App. at 628, 627 S.E.2d at 248; and *In re T.E.F.*, 359 N.C. 570, 614 S.E.2d 296 (2005) as support for his argument. We find each case readily distinguishable from the facts of this case. We hold the trial court's error in failing to orally state the precise duration of the disposition was without prejudice.

¶ 47 In *In re W.L.M.*, which is unpublished, the trial court erred by failing to state in open court the duration of the juvenile's commitment and in erroneously recording the written order. 218 N.C. App. 455, 721 S.E.2d 764, COA11-723, 2012 N.C. App. LEXIS 169, at *2. The trial court initially checked the "indefinite commitment" box on the written disposition order, then attempted to amend the commitment period on the order by crossing out the previously marked box and checking the "definite period" box "without designating a duration for that period." *Id.* at *3. We concluded that the modified written order did "not state the duration of confinement with certainty or particularity." *Id.* Our Court "vacate[d] the disposition portion of the order and remand[ed] for a new hearing." *Id.*

¶ 48 *In re B.P.* does not concern a juvenile dispositional order, but rather the timely entry of dispositional order entered after the court adjudicated a parent's minor children neglected and dependent. 169 N.C. App. at 730, 612 S.E.2d at 329–30 (2005). The pertinent portion of the statute in that case stated, "[t]he dispositional order shall

be in writing, signed, and entered no later than 30 days from the completion of the hearing . . . ." *Id.* at 735, 612 S.E.2d at 333 (citing N.C. Gen. Stat. § 7B-905(a) (2003). Additionally, the statute required the disposition to state the "duration" and "the person who is responsible for carrying out the disposition and the person or agency in whom custody is vested." *Id.* at 735, 612 S.E.2d at 333; *see also* N.C. Gen. Stat. § 7B-905(a). The oral disposition announced in open court failed to indicate the "person or agency in whom custody is vested" and the "duration" of the order. *Id.* at 736, 612 S.E.2d at 333. Moreover, the written dispositional order was not timely filed as required by statute due to a clerical error. *Id.* at 735, 612 S.E.2d at 332–33. We held the respondent was prejudiced because she was "not provided with necessary information from which she could prepare for future proceedings" and had "no notice of the particular findings of fact or conclusions of law upon which the trial court based its decision." *Id.* at 736, 612 S.E.2d at 333.

¶ 49        In *In re J.L.B.M.*, the trial court properly orally announced the juvenile's commitment would not exceed his eighteenth birthday but omitted the maximum term of commitment from the written order as required under N.C. Gen. Stat. § 7B-2513(a). *In re J.L.B.M*, 176 N.C. App. at 628, 627 S.E.2d at 249. We remanded the dispositional order to the trial court for correction of the clerical error. *Id.* at 628, 627 S.E.2d at 248.

¶ 50        In *In re T.E.F.,* our Supreme Court affirmed the Court of Appeal's decision to

reverse and remand a matter to the trial court for a new juvenile adjudicatory hearing where the trial court had committed reversible error by not meeting all six requirements enumerated under N.C. Gen. Stat. § 7B-2407. *In re T.E.F.*, 359 N.C. at 572, 614 S.E.2d at 297. The Court reasoned that meeting all six requirements was "paramount and necessary in accepting a juvenile's admission as to guilt"; therefore, if any of the requirements are lacking, an adjudication based on the improper admission must be reversed. *Id.* at 574, 614 S.E.2d at 298. In declining to adopt the "totality of the circumstances" standard of review, the Court emphasized the importance of ensuring juveniles understand the "consequences of admitting their guilt." *Id.* at 575–76, 614 S.E.2d at 299.

¶ 51 K.N.H. provides no case in which our Court held a reversible error had occurred solely based on the trial court's failure to orally announce the duration of the order of disposition, and we decline to do so here. Here, the written disposition order clearly indicated that K.N.H. was committed to the YDC for a minimum period of six months and a maximum period until his eighteenth birthday despite the trial court's failure to orally state the duration of the commitment. Furthermore, K.N.H. was apprised of the fact that he was being committed to the YDC at the 23 May 2019 hearing. Since only the Level 3 disposition authorizes commitment of a juvenile pursuant to the Juvenile Code, K.N.H. was present when the trial court selected his disposition, and he had the opportunity to ask the trial court judge questions about

the disposition. *See* N.C. Gen. Stat. § 7B-2508(e) (2019). Although the trial court erred in orally stating the disposition, K.N.H. has not adequately shown that the statutory violations prejudiced him. *See In re Bullabough*, 89 N.C. App. 171, 178, 183, 365 S.E.2d 642, 646, 649 (1988) (holding the trial court's errors in unlawfully detaining the juvenile before the adjudication and in failing to direct the Clerk of the Superior Court to transcribe the record did not constitute reversible, prejudicial errors); *see also Glenn v. Raleigh*, 248 N.C. 378, 383, 103 S.E.2d 482, 487 (1958) (stating that in order to justify reversible error, a court's ruling must not only be erroneous, but also "material and prejudicial" so that a "different result would likely have ensued" but for the error).

## VII. Conclusion

We hold the trial court did not err in basing its entry of the Level 3 disposition solely on K.N.H.'s violation of terms and conditions related to electronic monitoring, for which the juvenile received only oral notice from his court counselor. Furthermore, we hold the trial court erred in failing to follow the statutory mandate of orally stating the precise duration of the disposition at the time of commitment; however, the juvenile has failed to show that he was prejudiced by the error. For the foregoing reasons, we affirm the Order on Motion for Review and the Disposition and Commitment Order.

AFFIRMED.

IN RE: K.N.H.

2021-NCCOA-267

*Opinion of the Court*

Judges Zachary and Murphy concur.